(No. 5995. November 3, 1933.)

CHARLES UHLIG, Appellant, v. BEN DIEFENDORF, Commissioner of Finance of the State of Idaho, Respondent.

[26 Pac. (2d) 801.]

S. T. Lowe, for Appellant.

Ray D. Agee, for Respondent.

WERNETTE, J.—During the years of 1924 and 1925 Charles Uhlig, G. R. Poulton, Harl B. Smith, L. A. Clayton and Oliver C. Tadlock executed and delivered to the Oakley

State Bank their respective non-negotiable promissory notes for sums owed by them to the bank. The aggregate amount of such indebtedness being $1,814.40. Each of the above-named parties, respectively, during the year of 1925 made payment to the bank upon the non-negotiable notes held by it.

Before payment of the notes by the makers, and without their notice or knowledge, these notes, together with other notes in the aggregate sum of $12,056.28, were pledged by the Oakley Bank to the Wallace Bank & Trust Company, as security for the payment of a note, in the principal sum of $6,500, owing by the Oakley Bank to the Wallace Bank. So, when the makers made payment to the Oakley Bank, that bank did not have the original notes in its possession, and the fact that the notes had been pledged was not known to the makers at this time. However, when payment was made to the Oakley Bank in place of the surrender of the original notes there was delivered to each of the parties, respectively, a copy or copies of his notes stamped, "Paid," "Oakley State Bank," with the date of payment.

The Oakley State Bank did not remit to the Wallace Bank & Trust Company any of the money that was delivered to it by the makers for the purpose of paying off, satisfying and discharging the notes.

Thereafter, on January 7, 1926, the Oakley State Bank closed and became insolvent. Its assets and affairs were placed in the hands of the Commissioner of Finance for liquidation and a liquidating agent was appointed; notice was given to creditors. Pursuant to such notice and within the statutory period of ninety days Uhlig, Poulton, Smith, Clayton and Tadlock each presented his claim in due form to the liquidating agent for the money that had been delivered to the Oakley State Bank for the purpose of paying off, satisfying and discharging the notes above specified, and claimed a classification as specified in subdivision 2 of section 77, chapter 133, Session Laws 1925 (now section 25–915, I. C. A.), which provides:

"The order of payment of the debts of a bank liquidated by the commissioner shall be as follows: . . . .

"2. All funds held by bank in trust."

The liquidating agent disallowed all of the said claims and refused to classify the same.

This action was instituted to recover the amount of said claims against said bank, and fix the classification of the same class as provided by subdivision 2, section 25–915, I. C. A. To avoid a multiplicity of suits, and before institution of this action, Poulton, Smith, Clayton and Tadlock each assigned his claim to plaintiff, Uhlig, who now prosecutes the action.

Each of the makers contended, and the plaintiff now claims and contends, that the payments so made, as aforesaid, to the Oakley State Bank constituted and were payment, in full, of said notes, though the makers have made no payments on any of said notes except the payments made to the Oakley State Bank.

The cause was tried to the court on a stipulation of facts. At the time the stipulation was signed, May 18, 1932, the collateral notes, held as security by the Wallace Bank, were in excess of the unsatisfied balance on the note owing by the Oakley Bank to the Wallace Bank.

Judgment was rendered dismissing the complaint on all of the five causes of action, from which judgment the plaintiff has appealed.

The paramount question to be determined is, Was the payment made by the makers to the Oakley State Bank full payment and satisfaction of the debts or obligations evidenced by the non-negotiable notes? To this main question all other issues of law raised by the parties are subordinate.

Pursuant to the stipulated facts it is conceded that the respective makers, without notice or knowledge that the notes had been pledged to the Wallace Bank, and with the intent to pay, satisfy and discharge the notes, paid the Oakley Bank the full amount of such notes, and the Oakley Bank accepted the amounts so paid as full payment thereof. The law appears to be quite unanimous and well settled

that the payment of a non-negotiable instrument to the assignor after the same has been transferred, whether before or after maturity, but before notice of the transfer, is full satisfaction of and discharges the obligation. (8 C. J. 600.) The author, in 21 R. C. L. 27, uses the following language:

"With respect to ordinary choses in action the rule is that the assignee thereof, if he would prevent payment to the assignor by the debtor, must notify the debtor of the assignment. Any payment made by such debtor in ignorance of the assignment is a good payment of the claim. This appears to be the law even in cases where the debt is evidenced by a written instrument."

In the case of *Vann v. Marbury,* 100 Ala. 438, 14 So. 273, 46 Am. St. 70, 23 L. R. A. 325, this language is used:

"In *Hart v. Freeman,* 42 Ala. 568, we said: 'The maker of a promissory note, not negotiable, may pay the same to the payee after its maturity, even though the note be not produced and delivered up at the time of payment, provided the maker has had no notice of the indorsement or transfer of the note to a third person. And such payment would be a valid and competent defense against the note, should it afterward appear and suit be brought thereon against the maker by another holder.' It was further held in that case that the burden of proof rests upon the plaintiff in the action, the defendant having proved the payment, to show that the defendant had notice of the transfer or indorsement before the payment was made. We cannot perceive that the fact that payment of the note in controversy was made before maturity takes the case without the influence of the decision in *Hart v. Freeman,* 42 Ala. 568."

In the case of *Dickerson v. Higgins,* 15 Okl. 588, 82 Pac. 649, it is stated:

"Since the principal note and interest coupons sued on in this action were non-negotiable, although they were transferred to the plaintiff in error, who claims to be an innocent purchaser before maturity and for a valuable consideration, they were subject to all the legal defenses which could have been interposed against the same in the hands of the original

payee. Moreover, we think the court was fully justified in finding from the evidence that the defendants had had no notice, either actual or constructive of the assignment of the mortgage, note and coupons to the plaintiff in error, and therefore that the defendants were protected in making the payment to the original payee at the place stipulated in the note and mortgage."

The supreme court of Kansas in *Sykes v. Citizens' Nat. Bank of Des Moines,* 69 Kan. 134, 76 Pac. 393, held as follows:

"The vital question is whether the makers of the note, at the time they paid the amount of it to the original payees, were without notice that the latter had by assignment parted with their ownership. If the payors had such notice before payment, they are not protected. If they paid without notice, the debt is discharged."

In the case of *Gilbert v. Nelson,* 5 Kan. App. 528, 48 Pac. 207, cited by appellant, wherein the maker of a non-negotiable note and mortgage made payment to the payee therein named without any knowledge of an assignment thereof, the court held as follows:

"The payment in law was complete satisfaction of the debt and mortgage."

Additional citation of authorities is unnecessary.

Under our statute, sec. 5-302, I. C. A., it is provided:

"In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment, but this section does not apply to a negotiable instrument, transferred in good faith and upon good consideration, before maturity."

■ It thus appears that by payment to the Oakley Bank by the makers of the notes they have fully and effectively satisfied and discharged the obligations evidenced by the same, as if the payments had been made directly to the Wallace Bank. In other words, the makers no longer owed anyone, nor were they under any further obligation by reason thereof. If, as we hold, the payments made were full

satisfaction and discharge of the obligations, they became such at the time they were made to the Oakley Bank and accepted by it. That being true, if appellant be permitted to recover, the makers would be allowed to recover back the money with which they paid their notes and at the same time the notes would be fully discharged. This would hardly measure up to the standard of equity and justice. The law gives them just what they bargained for when they made the payments. They were made for the purpose of liquidating or paying the obligations which they justly owed, and the law states to them: "You have honestly and faithfully paid the obligation to the Oakley State Bank, without notice of assignment, therefore your obligation is discharged, and you owe no one on account thereof." What more could they ask?

A question quite analogous in principle was before this court in the case of *McClellan v. Davis,* 45 Ida. 541, 263 Pac. 1002, 1005. In that case the defendant had executed and delivered his non-negotiable notes to the bank, which were assigned by the bank. The defendant went to the bank for the purpose of paying them but the bank refused to accept the money, and informed him that it was no longer in possession of the notes and had nothing further to do with them. Defendant then tendered his deposit in payment of the notes, which was refused by the bank. The bank later closed its doors and the holder brought suit. The defendant attempted to defeat foreclosure on the ground that the tender made to the bank discharged the notes and mortgage. The court held that the defendant had notice of the assignment and therefore his tender was not good, and further said:

"The finding that after the bank closed, defendant tendered an assignment of this claim against the bank is of no import whatever. *If the tender and deposit of the money before the failure of the bank were not payment, the tender of an assignment afterwards had no effect whatever. If the tender and deposit were payment, then de-*

*fendant had nothing to assign after the failure."* (Italics ours.)

If the defendant had nothing to assign in that case, in the event the tender and deposit were payment, then appellant has nothing to base a claim on in this case.

In the case of *Dickey County v. Hicks,* 14 N. D. 73, 103 N. W. 423, the court said:

"These facts do not show a right of recovery; for the county has received the equivalent contemplated by the payment of this money which it seeks to recover; that is, the discharge of its obligations for clerk hire. A recovery on this state of facts would be unconscionable. It would permit the county to possess itself of the money with which it has discharged its obligation for clerk hire, and thus is relieved from its admitted obligation without payment of any sum whatever."

See *West v. Brown,* 165 Ga. 187, 140 S. E. 500.

That the Oakley Bank had the right to accept the money paid by the makers in satisfaction of the debt is quite well established. In 49 C. J. 1018, the author says:

"Although there is some authority to the contrary, the right of a pledgor to sue on a pledged chose in action prior to termination of the pledge, is generally recognized."

Further, on page 1021, we find the following quotation:

"Upon the pledge of a chose in action as collateral, the pledgor is primarily relieved of the responsibility for its enforcement. But where the pledgor has the knowledge, power, and opportunity to enforce the collateral against the maker, he cannot complain of loss by reason of the pledgee's failure to enforce it."

The California court, in the case of *Allen v. Chatfield,* 34 Cal. App. 785, 168 Pac. 1149, states:

"It is true, as claimed by defendant, that prior to the commencement of this action plaintiff had assigned this contract to one E. P. Vandercook; but it also appears that the assignment was made for the purpose of securing repayment to Vandercook of the sum of $1,000 advanced by him to be used, and which was used, in making a payment to

defendant on account of said contract. The transaction then, while it conferred upon Vandercook a lien, did not vest in him the absolute ownership of the contract, but the plaintiff retained sufficient interest therein to authorize him to sue upon it."

In the case of *Globe & Rutgers Fire Ins. Co. v. Jewell-Loudermilk Co.*, 36 Ga. App. 538, 137 S. E. 286, we find the following:

"An assignor of a chose in action, who has assigned the legal title thereto to another as security for a debt, has such an interest therein that he may maintain a suit thereon in his own name. . . . . The alleged newly discovered evidence that, before suit, the plaintiff assigned his right and title to the cause of action to another as security for a debt, was irrelevant."

See, also, *Hawkins v. Mapes-Reeves Const. Co.*, 82 App. Div. 72, 81 N. Y. Supp. 794.

From these authorities and many others of similar import that could be cited, it appears quite positively that the Oakley Bank had the right and was fully justified in accepting the money in payment of the obligations. Certainly if the Oakley Bank had the right, and would have been justified in bringing suit to enforce the obligations, it would be equally justified in accepting the payments voluntarily made. As far as the record discloses the Oakley Bank had a substantial equitable interest in these notes which were assigned. They were not sold to the Wallace Bank outright, but these together with other notes amounting to over $12,000 were merely put up as collateral security for the payment of an obligation of approximately one-half such amount.

Appellant takes the position that payment is merely a defense that may be pleaded or waived, and that it is only available to the maker, and not to the defendant in this case. Appellant, however, seems to lose sight of the fact that the Oakley Bank still retained an equitable interest in the notes, and had the right to bring suit to enforce the collection thereof or accept payment voluntarily made. Having

accepted payment it held the money for the use and benefit of the assignee, the Wallace Bank & Trust Company. Certainly it is unreasonable to contend or say that the Oakley Bank, having received the money, which constituted full satisfaction and payment of the notes, would not have the right to set up the defense of payment on the notes when the makers attempt to recover back the money which was expressly paid for that purpose. If such contention of appellant was correct it would absolutely nullify and make ineffective the right of the Oakley Bank to either collect the money voluntarily paid or bring suit to enforce the obligations, which we cannot subscribe to under the record in this case.

The defense of payment is not the only one in this case. There is the further defense that the plaintiff has re-. ceived full benefit from these payments, namely, the extinguishment of the debts or obligations evidenced by the notes, and has no further right or interest in the money paid. If the money belongs to anyone it belongs to the Wallace Bank. It had the opportunity to protect itself, if it so desired. Immediately after the notes were pledged to the Wallace Bank, such bank could have notified the makers of such transfer; then payment by the makers to the Oakley Bank would not have been satisfaction of the debt. As to the rights of the Wallace Bank, as against the Oakley Bank for the money paid, we are not concerned in this case, as that issue is not before us. Undoubtedly there is a law that will protect the interest of the Wallace Bank, as against the Oakley Bank, provided it availed itself of the proper remedy in the manner and within the time provided by law. It seems quite probable that the Wallace Bank must have properly considered that payment to the Oakley Bank was satisfaction of the debt, as no steps were taken by it to enforce payment of the obligations against the makers of the notes at any time during the period of the statute of limitations. We are not to assume under this state of the record that the Wallace Bank will attempt to enforce the

collection of the notes as against the original makers, when under the law the debt has been fully paid and satisfied.

Before the appellant can recover he must show a cause of action in himself, and it is not sufficient for him to show a cause of action in someone else. In the case of *Stanger v. Hunter*, 49 Ida. 723, 291 Pac. 1060, this court said:

"The pleading must not only state a complete cause of action against the defendant but it must also show a right of action in the plaintiff."

In 49 C. J., 140, we find the following:

"It is incumbent upon plaintiff to allege sufficient facts to show that he is concerned with the cause of action averred, and is the party who has suffered injury by reason of the acts of defendant. In other words, it is not enough that he alleges a cause of action existing in favor of someone; he must show that it exists in favor of himself."

This the appellant has failed to do, either in the pleadings or proof.

Appellant further raises the issue of fraud, but such is not available to him for the reason that it was neither pleaded nor proven. (*Kemmerer v. Pollard*, 15 Ida. 34, 96 Pac. 206; *Milner v. Earl Fruit Co.*, 40 Ida. 339, 232 Pac. 581; *Moser v. Pugh-Jenkins Furniture Co.*, 31 Ida. 438, 173 Pac. 639, L. R. A. 1918F, 437.) Nor was the money paid to the Oakley Bank under a mistake of fact so as to justify granting relief, as the makers accomplished everything that could possibly be expected by them, full payment of the obligation.

In view of the conclusions reached, the other issues raised in this case become unimportant. We find that the court did not err in rendering judgment in favor of respondent and dismissing plaintiff's complaint.

Judgment affirmed, with costs to respondent.

Budge, C. J., and Givens, Morgan and Holden, JJ., concur.