(No. 6393. October 29, 1937.)

MINNIE LOUK, Respondent, v. GEORGE E. PATTEN and LEORA M. HOWELL, Appellants.

[73 Pac. (2d) 949.]

D. E. Rathbun and Hoyt Ray, for Appellants.

A. A. Merrill and O. A. Johannesen, for Respondent.

BUDGE, J.—March 30, 1934, respondent, Minnie Louk, procured a judgment against appellant George E. Patten for the sum of $1,053.30, the suit arising out of a breaching of appellant Patten's contract of marriage with respondent. This action was instituted by respondent to set aside a deed of con-

veyance, made at about the time of the breaching of the contract above referred to, from appellant Patten to his daughter, appellant Leora M. Howell, conveying title to lot 7 of Block 75, Riverside addition to the city of Idaho Falls, upon the grounds that it was given to hinder, delay and defraud respondent in collecting her judgment. The cause was tried to the court and findings of fact and conclusions of law were made and entered in favor of respondent and judgment was entered canceling, vacating and setting aside the deed. This appeal was taken from the judgment.

From the record it appears that subsequent to the time respondent obtained the judgment in her breach of promise action, appellant Howell, appellant Patten's daughter, brought an action in the justice court against respondent and obtained a judgment for $131.70, and thereafter an execution was issued out of the justice court and an attempted levy made on, and sale had of, the judgment previously obtained by respondent against appellant Patten, for the purpose of satisfying the judgment of appellant Howell against respondent. Upon motion of the attorneys for appellant Howell, the *Howell v. Louk* cause was transferred from the justice court to the probate court and in the probate court a motion was made to have the execution sale quashed and set aside for the reason that respondent had not been served with the writ. The sheriff, through his deputy, in the first return on the writ certified he had served respondent. He filed an amended return in the probate court wherein he certified that the writ had not been served on respondent and that his first return did not correctly set out the true facts. In the probate court the deputy sheriff was sworn and testified that neither the sheriff nor any of his deputies served the writ issued out of the justice court on the respondent; that the original return had not been carefully read by him, and said officer requested that he be permitted to amend the return and correct the error. Appellants by their own record established in the trial court the invalidity of the sale on execution out of the justice court and that the return made by the sheriff through his deputy was incorrect. It would hardly be consistent with justice to hold that in the face of such a state of facts appellants would be permitted to urge the validity of the sale of

the judgment, obtained by respondent to satisfy the judgment of appellant Howell against respondent, in this court or to urge error in the action of the trial court in holding that there was no merit in appellant's contention that respondent was not the owner of the judgment and therefore not a proper party to the action.

There is no merit in the contention that respondent was not entitled to maintain the action to set aside the deed involved herein for the reason, urged by appellants, that respondent had assigned the judgment to her counsel. The evidence is undisputed that respondent's counsel took her assignment of this judgment as security for attorneys fees and money loaned respondent by her attorneys with the understanding that when the indebtedness was paid the balance would go to respondent, which being true, the respondent was not divested of the judgment so as to deprive her of the right to maintain the present action. The rule is stated in *Uhlig v. Diefendorf*, 53 Ida. 676, 26 Pac. (2d) 801, as follows:

"In the case of *Globe & Rutgers Fire Ins. Co. v. Jewell-Loudermilk Co.*, 36 Ga. App. 538, 137 S. E. 286, we find the following:

" 'An assignor of a chose in action, who has assigned the legal title thereto to another as security for a debt, has such an interest therein that he may maintain a suit thereon in his own name . . . . '

"See, also, *Hawkins v. Mapes-Reeves Const. Co.*, 82 App. Div. 72, 81 N. Y. Supp. 794."

Appellants seek to make the point that respondent was not a creditor of appellant Patten prior to or at the time of the conveyance of the property in question to his daughter, appellant Howell. It is urged that respondent could not have become a creditor of appellant Patten until in March, 1933, for the reason that there is evidence that after the breach occurring February 18, 1933, and after the conveyance of the property in question there was a new contract to marry, such contract being made in March, 1933. The court found that some time prior to February 18, 1933, appellant Patten entered into a contract of marriage with respondent and that on or about February 18, 1933, he breached said contract and refused to marry respondent. The court further found that

the deed conveying the real property involved to appellant Patten's daughter, was executed February 20, 1933, two days after the breach of the contract to marry. The evidence with relation to the reconciliation is to the effect that respondent and appellant Patten had some quarrel or dispute on February 18, 1933, and that appellant Patten then told respondent he would not marry her, and that some time in March there was a temporary reconciliation, appellant again stating he would marry respondent. It appears definitely from the record there was no mutual rescission of the contract to marry. In other words respondent did not release appellant Patten from his obligation to perform his promise or contract to marry her. It is clear from the evidence that there was no new, independent or mutual contract or promise to marry entered into between the parties in March, but merely a reiteration on the part of appellant Patten of the original promise made prior to February 18, 1933. It appears well settled that a subsequent promise by a person to carry out a subsisting contract with the promisee does not amount to a new or independent contract because of the absence or lack of a consideration. The rule is stated in 13 C. J. 351, sec. 207, as follows:

"A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or the promise to perform, an existing legal obligation is not a valid consideration."

"The promise of a person to carry out a subsisting contract with the promisee or the performance of such contractual duty is clearly no consideration, as he is doing no more than he was already obliged to do, and hence has sustained no detriment, nor has the other party to the contract obtained any benefit." (13 C. J. 353, sec. 209 (1).)

The record clearly supports the conclusion that there was no new and independent contract entered into between appellant Patten and respondent subsequent to February 18, 1933, and that there was merely a reaffirmance by appellant Patten of the original promise. The fact, if it be a fact, that appellant Patten stated subsequent to February

18, 1933, that he would marry respondent and later refused to carry out his promise would not discharge him from his former contract which had not been mutually rescinded. There must have been a mutual abandonment of the original contract made prior to February 18, 1933, and the entering into of a new and independent contract, mutually agreed upon, in order to discharge the former contract. It cannot be logically contended that there was not a contingent liability in favor of respondent at the time of the conveyance in question. With reference to contingent liability the following is said in *Associated Fruit Co. v. Idaho-Oregon Fruit Growers' Assn.*, 44 Ida. 200, 256 Pac. 99:

"According to the weight of authority—

'A contingent liability is as fully protected against fraudulent and voluntary conveyances as a claim certain and absolute, and whoever has a claim or demand arising out of a pre-existing contract, although it may be contingent, is a creditor whose rights are affected by such conveyances and can avoid them when the contingency happens upon which the claim depends.' (27 C. J. 473, sec. 113; Bump, Fraudulent Conveyances, 4th Ed., sec. 503.)"

 Whether respondent became a creditor prior to or subsequent to the execution of the gift deed is not necessarily controlling or decisive in this case under the facts and circumstances disclosed by the record. The rule would seem to be that even in the case of a subsequent creditor, where actual fraud, as in the instant case, is established, the conveyance is void as to subsequent creditors as well as prior creditors. (Bump, Fraudulent Conveyances, third edition, chap. 13, p. 314, et seq.; 27 C. J., p. 521, sec. 198; 27 C. J., p. 474, sec. 117; 12 Cal. Jur., p. 978, sec. 20; *Banning v. Marleau*, 133 Cal. 485, 65 Pac. 964.) The instant action involved a transaction between father and daughter alleged to have been made in violation of I. C. A., section 54–906, which provides as follows:

"Every transfer of property, or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor *or other person* of his demands, is void against all creditors of the debtor and their successors in interest, and against any person upon whom

the estate of the debtor devolves in trust for the benefit of others than the debtor.''

Considering such statutory provision as that found in I. C. A., sec. 54–906, Bump, Fraudulent Conveyances, third edition, page 315, recites as follows:

''The statute embraces not merely conveyances made with intent to delay, hinder or defraud creditors, but conveyances made with intent to delay, hinder or defraud others. The word 'others' is inserted to take in all manner of persons, as well creditors after as before the conveyance, whose debts should be defrauded. The enacting clause is still stronger because the word 'creditors' is not mentioned, but general words 'person or persons.' The words of the statute seem to be so general in order to take in all persons who shall be in any ways hindered. It is accordingly well settled that if a party makes a conveyance of his property with the express intent to become indebted to another, and to defraud him of his debt by means of artifice, such subsequent creditor may contest and by proof defeat the transfer, although he was not a creditor of the grantor at the time of the conveyance.''

Transfers between members of a debtor's household, while not a badge of fraud in the sense that a *prima facie* case is made against the grantee by the circumstances alone, still is an aid to the creditor in that only slight evidence in addition is required for a *prima facie* case. (The Law of Fraudulent Conveyances, Garrard Glenn, p. 412, sec. 307.) The record discloses that subsequent to the alleged gift deed, to which reference has been made, appellant Patten remained in possession of the property, rented the same, collected the rents, paid the water, light, fuel and taxes, and exercised the same control over the property as he had prior to the execution of the deed, and there was no accounting to his daughter. It appears that the daughter never went into possession and in truth and in fact there was no change of possession or evidence of the right of possession other than the alleged gift deed. As was said in *McRoberts v. Upsher & Upsher*, 175 Okl. 145, 52 Pac. (2d) 1070:

''All the facts and circumstances in evidence must be taken into consideration in determining the intent of the parties. The evidence shows that after the deeds were executed in

1927, down to the date of the trial in February, 1934, more than six years, the grantor, J. N. McRoberts, had continued to manage and use the property as his own, and apply the rents and profits to his own use the same as though the deed had never been made. He never made an accounting to Sam McRoberts, the grantee; he paid the taxes and some of the principal of the note, which was his personal obligation. The balance he used for his own personal benefit. All this without any protest whatever from the grantee Sam McRoberts.

''From all the evidence, facts, and circumstances, it appears that the deeds were never intended to be anything more than mere paper transfers of the record title. All the beneficial use of the property was retained by J. N. McRoberts.''

The facts in the instant case are almost identical with the facts in the above-quoted case. It further appears that not only did appellant Patten convey the property in question to his daughter as above stated, but conveyed all his property, both real and personal, of every kind and nature, that he then owned to divers parties and at the time that the judgment was entered against him in favor of respondent he was insolvent. It is further conclusively established by the record that appellant Patten's daughter, appellant Howell, knew at the time the alleged deed was delivered to her by appellant Patten of the contract of marriage between respondent and appellant Patten and of the breach thereof by her father. Upon reading the record no other conclusion can logically or reasonably be drawn than that there is ample evidence to support the court's finding that the alleged gift deed was executed by appellant Patten to his daughter for the purpose of defrauding respondent and to prevent her from realizing on any judgment she might obtain against appellant Patten. There is ample evidence to support the court's conclusions and judgment. (*California Consolidated Min. Co. v. Manley*, 10 Ida. 786, 81 Pac. 50; *Kantola v. Hendricson*, 52 Ida. 217, 12 Pac. (2d) 866; *Liuzza v. Brinkerhoff*, 3 Cal. App. (2d) 218, 39 Pac. (2d) 283.)

An examination of appellants' brief will disclose that the question of *res judicata* and the question of estoppel

are not discussed, it being merely suggested in appellants' brief that:

"The Court erred in finding no merit in plaintiff's allegation and proof of estoppel."

and:

"The Court erred in failing to find that the plaintiff was estopped in accordance with defendant's allegations and proof."

It has been uniformly held by this court that it will not review an assignment which does not point out the particulars in which the alleged error consists. (*Bain v. Olsen,* 39 Ida. 170, 226 Pac. 668.)

"An assignment of error in a brief of appellant to the effect that the court erred in making a certain finding is not sufficiently definite to point out the ground on which the court erred. It does not call in question the sufficiency of the evidence to support the finding." (*Weber v. Pend d'Oreille Min. etc. Co.,* 35 Ida. 1, 203 Pac. 891.)

(*Burton v. Bayly,* 50 Ida. 707, 300 Pac. 359; *McMillan v. Sproat,* 51 Ida. 236, 4 Pac. (2d) 899; *Hill v. Porter,* 38 Ida. 574, 223 Pac. 538; *Coeur d'Alenes Lead Co. v. Kingsbury,* 56 Ida. 475, 55 Pac. (2d) 1307.) It further appears to be unnecessary to consider these contentions, no authorities being cited in connection therewith nor argument made in the briefs. (*Thompson v. Walker,* 56 Ida. 461, 55 Pac. (2d) 1300; *Coeur d'Alenes Lead Co. v. Kingsbury, supra.*)

While there are thirteen specifications of error, but five questions are raised under the points and authorities, and we think in so far as material to a disposition of this case all necessary points have been disposed of.

The judgment is affirmed, subject to the rule announced in *Buhl State Bank v. Glander,* 56 Ida. 543, 56 Pac. (2d) 757. Costs awarded to respondent.

Givens, J., concurs.

Morgan, C. J., Ailshie, J., and Downing, D. J., concur in the conclusion reached.

Holden, J., deeming himself disqualified did not sit at the hearing and took no part in the decision.