STATE OF MONTANA, EX REL. JOHN D. MORGAN, RE-LATOR, *v.* THE STATE BOARD OF EXAMINERS, ET AL., AND A & B C O N S T R U C T I O N CO., AND MORRISON-MAIERLE, INC., RESPONDENTS.

No. 9786.

Submitted February 14, 1957. Decided February 25, 1957.

As Amended April 3, 1957.

309 Pac. (2d) 336.

Mr. Floyd O. Small, Helena, for relator.

Mr. Forrest H. Anderson, Atty. Gen., Mr. William F. Crowley, Asst. Atty. Gen., for respondent State Board of Examiners.

Messrs. Skedd, Harris & Mufich, Helena, for respondent A & B Construction Co.

Messrs. Toomey & Hughes, Helena, for respondent Morrison-Maierle, Inc.

Mr. Small, Mr. Crowley and Mr. Lloyd J. Skedd argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiff, a resident and taxpayer of Lewis and Clark County, brought this action originally in this court. He alleges, in the first cause of action in substance, that even though this court in Bryant v. Board of Examiners, Mont., 305 Pac. (2d) 340, declared chapter 278, Laws of 1955, "invalid," yet defendant Board did on February 2, 1957, pass a resolution to issue bonds under the authority of chapter 278 in the sum of $25,000 to pay for the construction of the state capitol driveway and landscaping; that unless restrained the defendant Board will issue the bonds and expend the proceeds for the purpose stated in the resolution.

As a second cause of action, plaintiff alleges that acting under chapter 7, Laws of 1953, defendant Board issued and sold bonds in the sum of $300,000 for the purpose of repairing the state capitol building; that acting under chapter 2, Laws of 1955, it issued and sold bonds in the sum of $100,000 for the purpose of repairing the state capitol building; that acting under chapter 278, Laws of 1955, defendant Board issued and sold bonds in the sum of $100,000 for reconstructing and renovating the state capitol building including roll call voting machines in the house

of representative chambers; that from the above-mentioned bond
issues defendant Board expended $495,599.04 and has incurred
further indebtedness in the sum of $194,012.04 for the purpose
of repairing, reconstructing and renovating the state capitol;
that all of the bond issues aforesaid are under the above-men-
tioned statutes made payable from the capital building land
grant fund.

The complaint alleges that all of the above expenditures have
been made in violation of sections 12 and 17 of the Enabling
Act as interpreted in Bryant v. Board of Examiners, and that, in
future years, taxes must be increased and funds raised to reim-
burse the capital land grant fund. It is alleged upon informa-
tion and belief that the Legislature will approriate money from
the general fund to reimburse the capital land grant fund if this
court determines that reimbursement is required by law.

Original jurisdiction is grounded upon the proposition that
speedy determination of the questions is necessary to the end
that legislative action by the assembly, now in session, may be
sought before adjournment, if necessary, and particularly as
regards the item of $194,012.04.

Plaintiff seeks a declaratory judgment that not only chapter
278, Laws of 1955, be declared null and void in its entirety, but
that chapter 7, Laws of 1953, and chapter 2, Laws of 1955, meet
with the same fate; that all sums expended under any of these
acts be determined to have been illegally expended from the
capital land grant fund and that the amounts are now due and
owing to that fund and should be repaid from the general
fund.

Defendants have each filed a motion to quash the order to
show cause and the defendant Board and defendant Morrison-
Maierle, Inc., filed a demurrer. Defendants on the hearing
elected to stand on the motions and demurrers.

The motions and demurrers challenge the sufficiency of the
complaint.

The first question urged at the oral argument on behalf of
defendant Board was that the majority opinion in Bryant v.

Board of Examiners, 130 Mont. 512, 305 Pac. (2d) 340, was and is unsound and should be overruled. If that contention be upheld the other questions disappear.

We are asked to overrule the Bryant decision so far as it holds that the capital land grant fund may not be used for repairing buildings already constructed and for the installation of roll call voting machines because pertinent case law was not brought to the attention of the court which if applied will result in an opposite conclusion.

This court has held that income from the university land grant which the Enabling Act provides shall be used for the support and maintenance of the public schools and institutions, could be used for the erection of buildings. State ex rel. Blume v. State Board of Education, 97 Mont. 371, 34 Pac. (2d) 515; State ex rel. Wilson v. State Board of Education, 102 Mont. 165, 56 Pac. (2d) 1079. Wyoming has held to the same effect. See Arnold v. Bond, 47 Wyo. 236, 34 Pac. (2d) 28.

If the money pledged for the support and maintenance of the institutions may be used to erect buildings, then it is at least persuasive that the converse should be true, viz., money pledged for the erection of buildings may be used for repairing the buildings or for supporting and maintaining the institutions.

But, however, this may be, the Enabling Act is sufficiently broad to permit use of the capital land grant fund for the purpose of repairing buildings already constructed.

The Enabling Act must be liberally construed with the view of accomplishing the object sought to be attained. R.C.M. 1947, section 12-202; State ex rel. Bookstore v. Potts, 141 Wash. 110, 113, 250 Pac. 1090, 1091.

In the Potts case the court said:

"To arrive at the intent of Congress as it is expressed in the Enabling Act, the conditions then present should be called to mind. At that time the federal government owned vast quantities of land in the territory which was thinly settled. The resources thereof had not been developed, industries had not been established, transportation was limited, and property values

were low. It was, undoubtedly, the purpose of Congress, by making the grant to give to the new state that should come in under the Enabling Act land for public buildings at the state capital sufficient to enable such buildings to be constructed and equipped as an institution without resort to general taxation for any part of that expense. If resort should be made to general taxation for the purpose of raising the $600,000 necessary for the furniture and furnishings of the administrative and legislative building, a thing would be done which Congress sought to avoid. There is no provision in the act relative to acquiring land upon which the buildings could be erected, but, manifestly, this would be a necessary incident. The buildings and the land alone, without furniture and furnishings, would be useless for the purpose intended. The furniture and furnishings of the administrative and legislative building have an immediate and direct bearing upon the purpose for which the lands were granted.''

It should be noted too, that the court in the Potts case, 141 Wash. at page 113, 250 Pac. at page 1094 had this to say regarding the words ''erecting public buildings'' as used in section 12 of the Enabling Act, and '' 'for public buildings' '' as used in section 17:

''* * * There has been much discussion as to the meaning and limitations of the word 'erect' as used in section 12, but it seems to us that the Congress did not intend a different meaning when it used the words 'erect public buildings' from that when it said in section 17 'for public buildings'. Using the words 'public buildings' and omitting the word 'erect' in section 17, Congress provided that the 100,000 acres therein granted should be in addition to that before granted. 'For that purpose' indicates that Congress had construed the words of section 12 to mean the same as those of section 17, to wit, 'public buildings'. 'That purpose', found in section 17, apparently referred to the words 'public buildings' as used in that section and not to 'erect public buildings' as used in section 12. Again, in section 17 it is provided that the lands therein granted shall be used ex-

clusively for the purposes therein mentioned, that is, public buildings, and shall be disposed of in such manner as the Legislature of the state may provide."

There are cases which place a strict interpretation upon the word "erect" and which hold that it does not contemplate the repair of a building already erected. They are listed in the majority opinion in the Bryant case.

Those cases had to do with authority on the part of public officers to issue bonds payable from tax levies and in such cases it is proper to strictly construe the statutes and to hold that they do not confer implied authority.

The Potts case, in distinguishing that case from the case of Harrington v. Hopkins, 288 Mo. 1, 231, S.W. 263, which latter case is also relied on in the majority opinion in the Bryant case, pointed out this difference in the two cases.

It does not seem reasonable that Congress ever intended that the income from the capital land grant had to be used only for the erection of new buildings when an old one could be repaired at less expense, and which when repaired will serve the intended purpose as effectually as a new building and that is the result of the holding of many courts. See Brown v. Graham, 58 Tex. 254; Cotter v. Joint School Dist., 164 Wis. 13, 158 N.W. 80; Port Huron & N.W. Ry. Co. v. Richards, 90 Mich. 577, 51 N.W. 680; Harrell v. Board of Commissioners of Wilson County, 206 N.C. 225, 173 S.E. 614.

In other words the authority to erect a building for a designated purpose confers implied authority to keep it erected by repairing it.

The words "erect" and "construct" are synonymous. State ex rel. Davis v. Barber, 139 Fla. 706, 190 So. 809; State ex rel. City of Chillicothe v. Gordon, 233 Mo. 383, 135, S.W. 929; Butz v. Murch Bros. Const. Co., 199 Mo. 279, 97 S.W. 895.

The authority to erect or construct a building for executive, legislative, and judicial purposes confers implied authority to keep the building in a proper state of repair so as to serve the purpose intended.

194

The authority to construct an object confers power to maintain it or to keep it constructed by repairing it. In re Fowler, 53 N.Y. 60; First National Bank of Eutaw v. Smith, 217 Ala. 482, 117 So. 38; Town of Pelham v. B. F. Woolsey, D.C., 16 F. 418; Bell County v. Lightfoot, 104 Tex. 346, 138 S.W. 381; Board of County Commissioners of Bernalillo County v. McCulloh, 52 N.M. 210, 195 Pac. (2d) 1005.

As to the roll call voting machine, it is authorized as a part of the equipment of the building.

In the Potts case, supra, it was held that the capital land grant fund could be used for furniture and furnishings of the building used for administrative and legislative purposes. We need not go that far here. The roll call voting machine constitutes a fixture and as such as a part of the building. See Board of County Commissioners of Bernalillo County v. McCulloh, supra; Hudgins v. Mooresville Consol. School Dist., 312 Mo. 1, 278 S.W. 769, and Hendricks v. School District No. 1, 44 Wyoming 204, 10 Pac. (2d) 970.

The majority opinion, in Bryant v. Board of Examiners, supra, so far as it holds that capital land grant funds may not be used to repair, renovate or reconstruct an old building, and so far as it holds that such funds may not be used to install a roll call voting machine in the house of representatives, is hereby expressly overruled.

We are not unmindful of the doctrine of *stare decisis*. However as this court has said the rule is not inflexible and "previous decisions should not be followed to the extent that error may be perpetuated." Quoting from 21 C.J.S., Courts, section 193, pages 322, 323; State ex rel. Burns v. Lacklen, 130 Mont. 512, 284 Pac. (2d) 998.

Here, no intervening rights have grown up as a result of the Bryant case. It was just recently decided and by a divided court. The case has to do with future official action and in such cases we will re-examine legal questions more freely than in an ordinary case acquiesced in by the general public over a period of years. Valley County v. Thomas, 109 Mont.

345, 97 Pac. (2d) 345; Montana Horse Products Co. v. Great Northern Railway Co., 91 Mont. 194, 7 Pac. (2d) 919.

"In 1 Cooley, Constitutional Limitations, (8th ed. 1927), page 121, notes, it is stated: '* * * when a question involving important public or private rights, extending through all coming time, has been passed upon on a single occasion, and which decision can in no just sense be said to have been acquiesced in, it is not only the right, but the duty, of the court, when properly called upon, to re-examine the questions involved, and again subject them to judicial scrutiny'." Commonwealth ex rel. Margiotti v. Lawrence, 326 Pa. 526, 193 A. 46, 48.

The discussion in the dissenting opinion on the subject of jurisdiction of this court in a declaratory judgment proceeding overlooks the vital fact that the complaint also seeks an injunction, a subject matter over which this court has been given original jurisdiction expressly by section 3 of Article VIII of the Montana Constitution. What the rule may be as to a proceeding seeking declaratory relief only need not be considered in this case.

The motions to quash and the demurrers are sustained and the proceeding dismissed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICE CASTLES, concur.

MR. JUSTICE ADAIR: (dissenting).

The plaintiff, John D. Morgan, a taxpayer, commenced this suit by filing, direct in this state's highest appellate court, a complaint seeking a *declaratory judgment,* under the Uniform Declaratory Judgments Act, R.C.M. 1947, sections 93-8901 through 93-9816, declaring a proposed bond issue to be invalid and seeking to enjoin the issuance and sale thereof by the State Board of Examiners of Montana and others, at a time when such issuance and sale was already enjoined by final judgment of this court rendered December 7, 1956. Bryant v. Board of Examiners, No. 9700, 130 Mont. 512, 305 Pac. (2d) 340.

The complaint purports to set forth two separate causes of action. Neither purported count nor cause states facts sufficient to constitute a cause of action against any of the six defendants named in the complaint or sufficient to entitle the plaintiff Morgan to any relief whatever against any of the defendants or sufficient to invoke the jurisdiction of this court to grant any relief to any of the parties litigant other than to decline to accept, assume or exercise jurisdiction herein and to order the dismissal of this original proceeding here commenced.

This is the second suit against the State Board of Examiners of the State of Montana, J. Hugo Aronson, Governor of the State and others, involving the construction of the Enabling Act and the right thereunder to take, pledge and use the Capital Buildings Land Grant Fund for purposes other than for the purpose stated in sections 12 and 17 of the Enabling Act, as such Act read prior to its amendment and re-enactment by the passage in the 85th Congress of H.R. 348, approved by the President February 26, 1957, 71 Stat. 5.

The first suit was an appeal, No. 9700, decided by this court December 7, 1956. See Bryant v. Board of Examiners, 130 Mont. 512, 305 Pac. (2d) 340.

*The Enabling Act.* In 1889, the Congress of the United States passed a *law* known as the Enabling Act, approved February 22, 1889, 25 Stat. 676, which enabled Montana, Washington, North Dakota, and South Dakota to enter the Union upon accepting and complying with the terms and conditions provided in such federal *law*.

Section 12 of the Enabling Act provided that upon the admission of each of said states into the Union, the United States would grant to each, fifty sections of the unappropriated lands therein, ''for the purpose of erecting public buildings at the capital of said states for legislative, executive and judicial purposes.''

In section 17 of the Enabling Act, Montana was granted one hundred fifty thousand acres of land in addition to the grant made in section 12, supra, ''for public buildings at the capital of [the] state.''

*Ordinance No. I.* In section "Seventh" of Ordinance No. I, which is a part of the Constitution of Montana, this state accepted the several grants of land from the United States to the State of Montana mentioned in the Enabling Act "upon the terms and conditions therein provided." See volume 1, R. C.M. 1947, at page 294.

Section "Sixth" of Ordinance No. I, supra, provides: "That the ordinance in this article shall be irrevocable without the consent of the United States and the people of said State of Montana." See volume 1, R.C.M. 1947, at page 294.

Thus did the State of Montana accept from the United States the grants of lands made in sections 12 and 17 of the Enabling Act upon the terms and conditions therein provided which terms and conditions are unalterable and incapable of being recalled or revoked without the mutual consent of the United States and the people of the State of Montana.

*Capital Buildings Land Grant Fund.* The money and revenue received by the state from the lease, rental, sale or other use or disposition of the lands so granted in the Enabling Act "for the purpose of erecting public buildings at the capital" for legislative, executive and judicial purposes constitute and are the Capital Buildings Land Grant Fund of this state.

*Chapter 278 Laws of 1955.* In 1955 the Thirty-fourth Legislative Assembly of Montana passed an Act entitled, "An Act to Provide for the Issue and Sale by the State Board of Examiners of Bonds for the Purpose of Reconstructing and Renovating the State Capitol [sic] Building Including Roll Call Voting Machines in the House of Representatives Chambers; Designating the Funds From Which Said Bonds Shall be Paid; Providing for a State Capitol [sic] Building Reconstruction and Renovation Interest and Sinking Fund; Enumerating the Powers and Duties of the State Board of Examiners in Carrying Out the Provisions of This Act."

This Act of Montana's Thirty-fourth Assembly received the approval of Governor J. Hugo Aronson on March 15, 1955,

and became chapter 278, pages 761 to 764, of the Montana Session Laws of 1955. It purports to authorize the State Board of Examiners of the State of Montana to issue and sell bonds in an amount not to exceed $750,000, "the proceeds of which are to be used solely for the purpose of reconstructing and renovating the state capitol building including roll call voting machines in the house of representatives chambers at Helena, Montana." See section 1 of Chapter 278, Montana Session Laws of 1955.

Section 7 of chapter 278, Laws of 1955, supra, in part, provides:

"The principal and interest of the bonds authorized by this act shall be payable out of the following fund and from it only: All the income received from the capitol [sic] building land grant, shall be, and the same is hereby perpetually dedicated and appropriated for the payment of the principal and interest of the bonds provided for by this act. * * *"

*Board's 1956 Resolution.* On April 26, 1956, the State Board of Examiners of the State of Montana, purporting to act under the provisions of chapter 278, Laws of 1955, supra, passed, adopted and approved a resolution authorizing and directing the issuance of bonds in the amount of $650,000. The resolution is quite lengthy. It is entitled:

"Resolution Authorizing and Directing the Issuance of State Capitol [sic] Building Bonds, Prescribing Their Form, Terms and Manner of Execution and Delivery, Awarding Their Sale, Specifying and Appropriating the Funds to Be Used for Their Payment and Making Covenants by and in Behalf of the State of Montana as to the Administration of Such Funds."

The resolution is signed by J. Hugo Aronson, Governor, S. C. Arnold, Secretary of State, and Arnold H. Olsen, Attorney General, and attested by G. L. Bryant, then and now, the duly appointed executive clerk of said State Board of Examiners..

*Validity of Bonds.* Thereupon prospective purchasers of the bonds to be issued as directed in the above resolution, in-

cluding Kalman & Company, Inc., of Minneapolis, Minnesota, submitted the Board's above resolution and the proceedings incident thereto to their legal counsel who, after examining same in the light of the provisions of the Enabling Act, 25 Stat. 676, questioned the validity of the bonds so about to be issued and withheld their approval to the purchase thereof pending clarification of how strong the prospective purchasers of the bonds could count on the Capital Buildings Land Grant Fund as security.

To be valid, the purpose for which the bonds are to be issued must come within the provisions and limitations set forth in section 12 of the Enabling Act, supra, wherein the United States granted to the State of Montana the lands here involved *"for the purpose of erecting public buildings at the capital* of said states for legislative, executive and judicial purposes." Emphasis supplied. Enabling Act, sections 12, 17, vol. 1, R.C.M. 1947, at pages 65 and 67.

*The Bryant Case.* The questions raised by counsel for the prospective purchasers of the bonds, as to the validity of the proposed issue, were communicated to the State Board of Examiners and thereafter on June 4, 1956, the aforesaid G. L. Bryant as plaintiff, through his attorney, Wesley W. Wertz, Esq., commenced suit against "The Board of Examiners of the State of Montana; Hugo Aronson, Governor of the State of Montana; S. C. Arnold, Secretary of State of the State of Montana; Arnold H. Olsen, Attorney General of the State of Montana; each ex officio being a member of and all constituting the Board of Examiners of the State of Montana; Kalman & Company, Inc., a Minnesota Corporation, Defendants" by that day filing in the district court of Lewis and Clark County, Montana, in cause No. 25691 in that court, a complaint wherein the plaintiff, G. L. Bryant, sought to enjoin the issuance and sale of the bonds under the provisions of chapter 278, Laws of 1955, and the above resolution of the defendant Board of Examiners of the State of Montana, and wherein a declaratory

judgment was sought that would adjudge the proposed bond issue to be *invalid*.

In the meantime the defendant Board of Examiners authorized various engineers, electricians, artisans and workmen to lay out and construct a new driveway and do extensive landscaping outside and at the front of the statehouse and to supply and install in the house of representatives chamber a new electric roll call voting machine all to be paid for from a special fund to be known as the "State Capitol [sic] Building Reconstruction and Renovation Interest and Sinking Fund" all of which construction and work thereafter proceeded to completion.

In his complaint the plaintiff, G. L. Bryant, alleged that he is an elector and resident of the State of Montana and a taxpayer paying taxes on property in the state.

At the outset the action appears to have been a most "friendly suit" brought by the executive clerk of the State Board of Examiners against said Board and the public officers constituting said Board, to-wit, the Governor, Secretary of State and Attorney General. See Const. of Montana, art. VII, section 20.

There was no challenge by motion, demurrer or otherwise to the sufficiency of plaintiff's complaint, but immediately upon the filing thereof in the office of the clerk of the district court, all the above-named defendants, by and through their counsel, Arnold H. Olsen, Attorney General, and Robert L. Word, Special Assistant Attorney General, appeared in the action by then and there filing a joint answer to which the plaintiff immediately filed a reply whereupon the district judge, without hearing any witnesses or receiving any evidence, made and filed written findings of fact, denied the request of the plaintiff Bryant for an injunction and rendered judgment for the defendants. Thereupon and on the same day the plaintiff Bryant served and filed his notice of appeal from the judgment so entered against him. Thus on one and the same day, June 4, 1956, the G. L. Bryant suit was commenced, heard,

decided in the district court and appealed to the supreme court.

Two days later, to-wit, on June 6, 1956, G. L. Bryant, the plaintiff in the district court and the appellant in this court, filed his transcript on appeal in the office of the clerk of the supreme court.

June 12, 1956, on application of counsel for the respective parties, the rule of this court requiring printed briefs was waived and leave was granted to both the appellant and the respondents to file typewritten briefs, whereupon and on that day the appellant's typewritten brief on appeal and the respondents' typewritten answer brief were filed, together with a written stipulation executed by counsel for the respective parties waiving oral argument of the appeal and submitting the entire matter for decision on the briefs that day filed.

In considering the transcript on appeal and the briefs so submitted, this court of its own motion and notwithstanding the stipulation submitting the appeal on the briefs filed, thereafter called for oral argument on the appeal on certain pertinent questions and points of law not mentioned in the briefs filed and on June 27, 1956, the court heard such oral arguments presented by respective counsel for all the parties litigant, whereupon the appeal was again submitted for decision.

Independent study of the appeal thereafter made by the members of this court revealed certain decisions from other jurisdictions which appeared to be in point, but which had not been cited by counsel for any of the parties. Thereupon, after first consulting the convenience of counsel for all the parties, the court made and caused to be delivered to respective counsel, the following written order, viz:

"It Is Ordered that this cause be set for further oral argument for ten o'clock, a.m., on Friday, November 16, 1956, with particular attention as to whether the announced purpose of the bond issue here challenged as stated in Section 1 of Chapter 278, Montana Session Laws of 1955, is a purpose for which, under sections 12 and 17 of the Enabling Act, the income from the Capital Building Land Grant may lawfully be used, and

as to whether the Legislative Act authorizes the purchase of insurance and for the payment of more than four per cent (4%) interest. See: Board of Com'rs of Gaudalupe County v. State, 43 N.M. 409, 94 Pac. (2d) 515; State ex rel. King v. Lothrop, 55 Nev. 405, 36 Pac. (2d) 355; Harrington v. Hopkins, 288 Mo. 1, 231 S.W. 263; Jewett v. School District No. 25, 49 Wyo. 277, 283-286, 54 Pac. (2d) 546.''

Thereafter on the day set, the appeal was again and for a second time orally argued before the supreme court, at which time appellant's counsel and respondents' counsel each filed supplemental memoranda of authorities.

*Appeal Decided.* On December 7, 1956, this court rendered its decision and judgment reversing the judgment of the district court with directions to enter a judgment for the plaintiff, G. L. Bryant, and to award him appropriate injunctive relief not inconsistent with the views expressed in such opinion and decision. The opinion of the court was written by Mr. Justice Davis with Chief Justice Adair and Mr. Justice Bottomly concurring therein. Mr. Justice Angstman wrote a dissenting opinion. Mr. Justice Anderson did not sign either the majority opinion or the dissenting opinion nor did he record his views on the disposition of the appeal.

The respondents, dissatisfied with this court's action, immediately sought ways and means of achieving a different result, fighting the decision with every political and legislative resource at their command.

*Motion for Rehearing.* Under Rule XV of this court, the dissatisfied parties have ten days after the decision is rendered in which to serve and file their petition or motion for rehearing. Under such rule respondents had ten days after December 7, 1956, in which to serve and file their petition, but on December 17, 1956, on application of respondents' counsel, this court extended to twenty days the time for filing respondents' petition and motion for rehearing and on December 27, 1956, such petition was served and filed.

*Bill to Amend Enabling Act.* In the meantime, Montana's

Representatives in the Congress of the United States were contacted and a bill was drafted for introduction in the House of Representatives entitled: ''A bill to amend section 12 of the Act approved February 22, 1889 (25 Stat. 676), relating to the admission into the Union of the States of North Dakota, South Dakota, Montana and Washington, by providing for the use of public lands granted to the States therein *for the purpose of construction, reconstruction, repair, renovating, furnishings, equipment or other permanent improvement,* of public buildings at the capital of said States.'' Emphasis supplied.

*Rehearing Denied.* On January 3, 1957, respondents' petition for rehearing was denied on order signed by Associate Justices Davis and Bottomly and Chief Justice Adair. On the same date, remittitur issued and was forwarded to the clerk of the district court for Lewis and Clark County for filing and entry. Attached to such remittitur was a copy of this court's opinion and judgment, and a copy of the dissenting opinion of Mr. Justice Angstman on the appeal. At no time has the remittitur so issued out of this court ever been recalled.

When this court's remittitur and mandate were obeyed by the trial court the judgment entered in conformity to such remittitur and mandate was the judgment of the supreme court and by that judgment the questions which did actually arise on the trial or hearing in the trial court and those which could have been presented, as well as the rights of the parties in the subject matter of the suit, were finally determined and they became *res judicata.* Kimpton v. Jubilee Placer Min. Co., 22 Mont. 107, at page 109, 55 Pac. 918; Woodward v. Perkins, 119 Mont. 11, 171 Pac. (2d) 997; State ex rel. Dolenty v. District Court, 42 Mont. 170, at page 173, 111 Pac. 731; State ex rel. Dolenty v. Reece, 43 Mont. 291, 292, 115 Pac. 681; Lasby v. Burgess, 93 Mont. 349, 18 Pac. (2d) 1104.

*Congress Receives Bill to Amend the Law.* On January 3, 1957, whereupon this court denied respondents' motion for rehearing, Congressman Lee Metcalf introduced in the House

of Representatives of the 85th Congress, H.R. 348, being a bill to amend section 12 of the Enabling Act, 25 Stat. 676, by changing the wording thereof, thereby adding to and enlarging the purposes for which the lands granted may be used. The bill provides that section 12 of the Enabling Act, approved February 22, 1889, is amended to read as follows:

"That upon the admission of each of said States into the Union, in accordance with the provisions of this Act, fifty sections of unappropriated public lands within such States, to be selected and located in legal subdivisions as provided in section 10 of this Act, shall be, and are hereby, granted to said States for public buildings at the capital of said States for legislative, executive, and judicial purposes, *including construction, reconstruction, repair, renovation, furnishings, equipment, and any other permanent improvement of such buildings and the acquisition of necessary land for such buildings, and the payment of principal and interest on bonds issued for any of the above purposes.*

"Section 2. This act shall take effect as of February 22, 1889." Emphasis supplied.

The Enabling Act is a federal statute enacted by the Congress of the United States. To amend such statute and to enlarge and extend the purpose for which the lands granted therein may be used requires the action of the Congress and also the consent of "the people of said State of Montana." See Ordinance No. 1, section Sixth, Vol. 1, R.C.M. 1947, at page 294.

It is only judicial powers that the courts possess and they are prohibited from exercising the powers properly belonging to the legislative department of government. Constitution of Montana, art. IV, section 1.

The law says: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; * * *" R.C.M. 1947, section 93-401-15.

*Changes in Personnel.* At all times from the commencement in the district court, on June 4, 1956, of the G. L. Bryant suit to and including the determination of that suit on appeal on December 7, 1956, and the denial of respondents' motion for a rehearing and handing down of the remittitur on January 3, 1957, Chief Justice Hugh Adair and Associate Justices Horace S. Davis. R. V. Bottomly, Forrest H. Anderson and Albert H. Angstman were the members constituting the supreme court, Frank Murray was the clerk of the supreme court and the respondents, J. Hugo Aronson, Governor, S. C. Arnold, Secretary of State, and Arnold H. Olsen, Attorney General, constituted the respondent State Board of Examiners.

On the first Monday in January 1957, the supreme court and the State Board of Examiners experienced various changes in personnel, occasioned by the results of the general election of November 6, 1956, whereat, Associate Justice Forrest H. Anderson was elected Attorney General; Associate Justice Albert H. Angstman and Chief Justice Hugh Adair were elected Associate Justices, Clerk of the Court Frank Murray was elected Secretary of State and Governor J. Hugo Aronson was re-elected to office.

On January 7, 1957, Associate Justice Horace S. Davis, the author of the court's opinion on the G. L. Bryant appeal, completed the term for which he had been appointed and that day retired from the court, at which time he was succeeded by Chief Justice Adair who then and there qualified for and assumed the office of Associate Justice. On the same day, the Honorable James T. Harrison, on the appointment of Governor J. Hugo Aronson, qualified for and assumed the office of Chief Justice; Associate Justice Forrest H. Anderson that day qualified for and assumed the office of Attorney General; Frank Murray qualified for and assumed the office of Secretary of State, and, on the appointment of Governor Aronson, the Honorable Wesley Castles qualified for and assumed the office of Associate Justice to fill the vacancy therein occa-

sioned by the retirement from the court of Mr. Justice Anderson.

Thus at all times since January 7, 1957, Governor J. Hugo Aronson, Secretary of State Frank Murray and Attorney General Forrest H. Anderson have constituted the Board of Examiners of the State of Montana, while Chief Justice Harrison and Associate Justices Wesley Castles, R. V. Bottomly, Albert H. Angstman and Hugh R. Adair have constituted the Supreme Court of the State of Montana.

*Record Certified to United States Supreme Court.* On January 30, 1957, the respondents, the State Board of Examiners, J. Hugo Aronson, Governor of the State, et al., by and through their attorneys, Ralph J. Anderson, Esq., and Stanley P. Sorenson, Esq., filed in this court a praecipe for the certification to the Clerk of the Supreme Court of the United States of the documents in said G. L. Bryant appeal No. 9700, 130 Mont. 512, 305 Pac. (2d) 340, so decided by this court.

On February 1, 1957, the clerk of this court, as directed in said praecipe, prepared and certified to the clerk of the Supreme Court of the United States the designated documents and transcript in the G. L. Bryant case, supra.

*Board's 1957 Resolution.* On February 2, 1957, the State Board of Examiners passed a resolution that it issue bonds in the amount of $25,000 for the purpose of paying indebtedness already incurred for construction of "the Capitol Driveway and landscaping" to be paid from the capital buildings land grant fund pursuant to chapter 278, Laws of 1955.

*The Morgan Case.* On February 5, 1957, John D. Morgan, plaintiff, through his attorney, Floyd O. Small, Esq., filed direct in this, the supreme court, a complaint against the "State Board of Examiners and J. Hugo Aronson, Frank Murray and Forrest H. Anderson as members thereof; and A. and B. Construction Company, a Montana corporation; and Morrison-Maierle, Inc., a Montana corporation, Defendants."

*Complaint.* The complaint consists of some seventeen typewritten pages and sets forth two separate purported causes of

action, the first whereof contains sixteen and the second twenty-six separately numbered paragraphs.

In his purported first cause of action, the plaintiff, John D. Morgan, inter alia, alleged:

"I. The Plaintiff complains of the defendants above named and for cause of action alleges that he is a citizen of the United States and of the State of Montana, and a duly qualified and registered elector within the County of Lewis and Clark, State of Montana, and a free-holder and taxpayer upon real and personal property; that Plaintiff brings this action as such taxpayer on behalf of himself and all other taxpayers who desire to join him in the prosecution of said action.

\* \* \* \* \* \* \*

"XI. That pursuant to the provisions of chapter 278 of the Laws of 1955, the State Board of Examiners did issue bonds in the sum of one hundred thousand dollars ($100,000.00), and did expend the proceeds for the purposes set out in that act; and if the same were illegally expended the question arises as to whether the legislative assembly should pass an appropriation and impose a tax levy to replace said amount in the Capital Land Grant Fund.

"XII. That upon December 7, 1956, in the case entitled 'State ex rel. Bryant vs. State Board of Examiners et al', the said chapter 278 of the Laws of 1955 was declared by the Supreme Court of the State of Montana to be in violation of the Enabling Act, and particularly in violation of sections 12 and 17 of that Act, and the Supreme Court declared the said chapter 278 of the Laws of 1955 to be null, void and of no effect; *that owing to the far-reaching consequences of that decision and since it was by a divided court, plaintiff alleges upon information and belief that defendant State Board of Examiners et al, the said question should again be considered, to the end that chapter 278 be sustained, and that funds in the capital land grant fund, and from bonds issued under chapter 278, may be used to repair buildings already constructed and to install fixtures in the buildings.* [Emphasis supplied.]

208

"*XIII. That in spite of the Supreme Court's declaration of December 7, 1956,* in the case of 'State ex rel. Bryant vs. State Board of Examiners, et al', the defendant, State Board of Examiners, on the 2nd day of February, 1957, did make and pass a resolution to issue further bonds and expend further monies upon the authority of the said chapter 278 of the Laws of 1955 in the sum of Twenty-five thousand dollars ($25,000). A copy of the said resolution is attached to this complaint and is by this reference made a part hereof. [Emphasis supplied.]

"XIV. That the defendant, State Board of Examiners will, unless restrained by this court, issue the bonds and expend the proceeds received from these bonds pursuant to its resolution mentioned in paragraph XIII which resolution was passed under the purported authority of an invalid legislative act, to-wit, Chapter 278 of the Laws of 1955, which expenditure will be illegal and invalid; and that the State of Montana will, at some future time, be forced to levy and assess taxes to raise funds to replace the amount so improperly disbursed and expended.

"XV. That the plaintiff has no plain, speedy and adequate remedy at law, and will be greatly and irrecoverably damaged and injured if the defendants, State Board of Examiners, unlawfully issue bonds and expend the proceeds as hereinbefore alleged."

In his purported second cause of action, the plaintiff Morgan, *inter alia,* alleged:

\* \* \* \* \* \*

"XVII. That upon December 7, 1956, in the case entitled 'State ex rel. Bryant vs. State Board of Examiners et al', the Supreme Court of Montana declared that no monies realized from the capital land grant or from the capital land grant fund could be expended for repairing, reconstructing or renovating the state capitol at Helena, Montana.

"XVIII. That, *in spite of the Supreme Court's declaration of December 7, 1956,* in the case of "State ex rel. Bryant vs.

State Board of Examiners et al', *the defendant State Board of Examiners did on the 2nd day of February, 1957, make and pass a resolution to issue further bonds and expend further monies upon the authority of the said Chapter 278 of the Laws of 1955 in the sum of $25,000.00, and that such issuance of bonds and expenditure of monies would be in violation of the Enabling Act and Section 7 of Ordinance No. 1 of the Constitution of Montana.* \* \* \*

"XIX. That all of the $495,599.04 expended under the authority of Chapter 7 of the Laws of 1953, Chapter 2 of the Laws of 1955, and Chapter 278 of the Laws of 1955, has been unlawfully expended in violation of the Enabling Act and Section 7 of Ordinance No. 1 of the Constitution of Montana.

"XX. That any monies expended from the capital land grant fund for the purpose of paying the present outstanding indebtedness of $194,012.04 incurred under the authority of Chapter 7 of the Laws of 1953, or Chapter 2 of the Laws of 1955, or Chapter 278 of the Laws of 1955, would be expended in violation of the Enabling Act and of Section 7 of Ordinance No. 1 of the Constitution of Montana.

"XXI. That the expenditure of $495,599.04 has unlawfully depleted the capital land grant fund, and the plaintiff is informed and believes and therefore alleges on information and belief that this depletion will, in future years, require that taxes be increased, and funds raised to meet this deficiency, and to erect buildings at the capital.

"XXII. That any expenditure of funds from the capital land grant fund to pay the present outstanding indebtedness of $194,012.04 will further unlawfully deplete the capital land grant fund, and plaintiff is informed and believes, and therefore alleges oh information and belief that such further unlawful depletion will, in future years, require that taxes be increased, and funds raised to meet this deficiency and erect buildings at the capital, and to install equipment therein.

"XXIII. That the plaintiff is informed and believes, and therefore alleges on information and belief, that there is at the

present time, sufficient money in the general fund, available for legislative appropriation, to reimburse the capital land grant fund and to pay the present outstanding indebtedness, all without an increase in the plaintiff's taxes.

"XXIV. That the plaintiff is informed and believes, and therefore alleges on information and *believe,* that the legislature will so appropriate money from the general fund for the reimbursement of the capital land grant fund and for the payment of outstanding indebtedness, if it is the judgment of this court that reimbursement and payment required by law.

"XXV. That Chapter 278, Laws of 1955 has been passed upon by this Court and found invalid, but that the validity of Chapter 7 of the Laws of 1953 and Chapter 2 of the Laws of 1955 has not been examined by this Court; and that plaintiff's status as a taxpayer is affected by said Chapter 278 of the Laws of 1955, Chapter 7 of the Laws of 1953 and Chapter 2 of the Laws of 1955; and *plaintiff is informed and believes and therefore alleges on information and belief that the defendant Board believes that the validity of Chapter 278 should be reconsidered and Chapter 278 sustained, and that the bond issue thereunder should be upheld.''* Emphasis supplied.

*Prayer for Relief.* In the prayer to his complaint, the plaintiff taxpayer prays that this court grant him relief as follows: (1) That it grant an injunction perpetually enjoining the defendants, State Board of Examiners, from issuing bonds, expending funds or doing any official acts under the authority of chapter 278, Laws of 1955; (2) that it order the defendants to appear and show cause why they should not be so perpetually enjoined; (3) that it issue its *declaratory judgment* declaring chapter 278 of the Laws of 1955 and other statutes null, void and of no effect and violative of the Enabling Act and the Constitution of Montana; (4) that it *declare* no further bonds be issued or funds to be expended under chapter 278, Laws of 1955; (5) that this court *declare* that all sums expended to date under chapter 278, Laws of 1955 and the other designated statutes have been illegally expended; that

such sums are now due and owing to the capital buildings land grant fund and should be paid from the general fund of the state; and (6) that this court "*declare* that all present outstanding indebtedness may not be paid from the capital grant fund, but must be paid from the general fund of the State of Montana."

February 7th, an order was made and filed herein directing that an order to show cause issue requiring that at 2:00 p.m. on the 14th day of February, 1957, all the defendants, named in the suit, appear before this court and there show cause why "the State Board of Examiners, should not be perpetually restrained and enjoined from issuing bonds upon the purported authority of chapter 278 of the Laws of 1955." Justices Bottomly and Adair, being of the opinion that this an appellate court was without jurisdiction herein and that the complaint of the plaintiff, John D. Morgan, wholly failed to state facts sufficient to constitute a cause of action or to entitle the plaintiff to any relief whatever herein, protested the issuance of the order to show cause.

*Jurisdiction Challenged.* February 14th, in response to the order to show cause and at the time fixed therein, all the defendants appeared before the court by and through their respective counsel, whereupon and at the outset of the hearing, Justices Bottomly and Adair objected to and questioned the acceptance or exercise of jurisdiction by this court other than to dismiss the complaint and proceeding, stating it is their opinion:

"That the complaint fails to state facts sufficient to constitute a cause of action, or to entitle the plaintiff to any relief; that the complaint does not invoke the appellate jurisdiction of this court but seeks to invoke its original jurisdiction only, and that not in a manner or matter either necessary or proper to the complete exercise of its appellate jurisdiction; that this court is not authorized by the Constitution of Montana to accept or entertain jurisdiction in this original proceeding and that this court is prohibited by the Constitution of Mon-

tana and particularly sections 2 and 3 of article VIII and section 29 of article III thereof, from accepting, entertaining or exercising jurisdiction in this original action and proceeding. It is further apparent that the questions and law here attempted to be reviewed and recanvassed have been finally and fully settled, determined and adjudicated by this court in Appeal No. 9700, entitled 'G. L. Bryant, Appellant, v. The Board of Examiners of the State of Montana, et al., Respondents', 130 Mont. 512, 305 Pac. (2d) 340, decided December 7, 1956. For these reasons we are of the opinion that this court should decline to accept jurisdiction herein other than to order the cause dismissed. We therefore oppose the issuance of the order to show cause filed by the Chief Justice herein on February 7, 1957, or the further exercise of jurisdiction by this court other than to dismiss the cause.''

The Morgan case is not an appeal invoking the *appellate jurisdiction* of the supreme court. The Morgan suit has never been in the district court. It is an original proceeding here commenced of which only the district courts have original jurisdiction under our Constitution. Art. VIII, sections 2, 3 and 11.

*Jurisdiction of Subject Matter.* Jurisdiction as applied to a particular controversy is the power to hear and determine that controversy. Reed v. Woodmen of the World, 94 Mont. 374, 22 Pac. (2d) 819.

A court has no power to do anything which is not authorized by law.

Three things are essential to the jurisdiction in any case: First, the court must have cognizance of the subject matter of the action; second, the proper parties must be before the court; and third, the action must be invoked by proper pleadings. Haggerty v. Sherburne Merc. Co., 120 Mont. 386, 389, 186 Pac (2d) 884.

Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the proceedings in question belong. In the instant suit the plaintiff Morgan seeks a declaratory judgment under the Uniform Declaratory

Judgments Act, R.C.M. 1947, sections 93-8901 through 93-8916.

The district courts of Montana are courts of general, original jurisdiction. 21 C.J.S., Courts, section 273, page 482, note 11; Const. of Montana, art. VIII, section 11; In re Stevenson's Estate, 87 Mont. 486, 497, 498, 289 Pac. 566; Thelen v. Vogel, 86 Mont. 33, 39, 40, 281 Pac. 753; Crawford v. Pierse, 56 Mont. 371, 376, 377, 185 Pac. 315. That such district courts have been invested with the jurisdiction that enables them to hear and determine proper actions for declaratory judgments is beyond question. Compare Murrell v. Stock Growers' Nat. Bank, 10 Cir., 74 F. (2d) 827, 831, construing section 89-2401 of the Wyoming Revised Statutes 1931 (now section 3-5801, W.R.S. 1945) identical with R.C.M. 1947, section 93-8901, supra.

The source of the jurisdiction of the supreme court of Montana is found in sections 2 and 3 of article VIII of the Constitution of Montana. Bordeaux v. Bordeaux, 26 Mont. 533, 535, 69 Pac. 103.

"Except as otherwise provided in the constitution, this court has appellate jurisdiction *only*." State ex rel. Scharnikow v. Hogan, 24 Mont. 379, 381, 62 Pac. 493, 494, 51 L.R.A. 958.

Neither section 2 nor section 3 of article VIII of the Constitution confers any power upon the supreme court to accept and exercise original jurisdiction of this original proceeding here commenced or to grant the declaratory judgment and relief sought by the plaintiff Morgan.

In Willis v. Pilot Butte Mining Co., 58 Mont. 26, at page 34, 190 Pac. 124, 125, this court quoted with approval from In re Weston, 28 Mont. 207, 72 Pac. 512, as follows:

" 'The source of all power vested in the Supreme Court is the Constitution of the state, and in it must be found the measure of jurisdiction.' * * * The power to issue, hear, and determine the six original writs enumerated above marks the limit of the original jurisdiction of this court." The opinion in the Willis case, supra, continues: "It will be readily seen, therefore, that the legislature was without authority to grant to this court jurisdiction to try the cause 'anew' as

though the matter was originally before us, and, to the extent that section 22(d) of the Compensation Act attempts to confer such jurisdiction, it is unconstitutional.''

It is the undoubted weight of authority that an appellate court, exercising the jurisdiction to review, will not entertain an original application for a *declaratory judgment* in the absence of a controlling constitutional provision or valid statutory enactment. Here there is neither. On the contrary the statute provides that, ''A judgment or order in a civil action, except when expressly made final by this code, *may be* reviewed as prescribed in sections * * * 93-8001 to 93-8023, *and not otherwise.*'' R.C.M. 1947, section 93-8001. This statute is both mandatory and prohibitory.

In 26 C.J.S., Declaratory Judgments, sections 112 and 113, pages 251 through 258, it is said that, ''declaratory judgment statutes are not jurisdictional, and do not create, grant, or supply jurisdiction. Furthermore, since jurisdiction in a declaratory judgment action cannot be conferred on a court by consent or stipulation of the parties, a declaratory judgment action may be maintained only if there exist the jurisdictional conditions which are required in ordinary actions, and a court may sua sponte raise the question of its own jurisdiction over the subject matter. To sustain an action for declaratory relief, the court must have the power to grant such relief, the court must have jurisdiction of the parties, the subject matter of the controversy must be within the jurisdictional limits of the court, and a court may not grant declaratory relief if exclusive jurisdiction over the subject matter of the controversy is vested in some tribunal other than the court in which the action is brought.'' Section 112, pages 251, 252, 253, notes 17-27.

Again: ''Statutes authorizing declaratory judgments extend the power of the courts to grant relief in cases otherwise within their jurisdiction, but such statutes only change the method of exercising existing jurisdiction by providing an additional procedure for utilizing the existing jurisdiction of the courts, and

by affording a more adequate and flexible remedy in cases where jurisdiction already exists. Such statutes do not confer any additional jurisdiction on the courts, and do not extend the existing jurisdiction, or alter or enlarge the jurisdiction of the courts as to parties or as to subject matter. Statutes providing for the rendition of declaratory judgments do not repeal, change, or modify basic requirements of jurisdiction, and in order that a court have jurisdiction to render a declaratory judgment over any subject matter, such jurisdiction must exist independent of the Declaratory Judgment Act, and a declaratory judgment may be rendered only in cases which would be within the jurisdiction of the court were affirmative relief sought. Declaratory judgment statutes were not intended to broaden the functions of the courts so as to include issues which could not be determined by the courts in ordinary actions, and such statutes do not extend the jurisdiction of courts over matters which are purely political or confer on a court of equity jurisdiction over a subject matter which the court had not previously possessed." Section 113, pages 255, 256, 257, 258, notes 55-68.

The first sentence of the first section of Montana's Uniform Declaratory Judgments Act, R.C.M. 1947, section 93-8901, provides: "Courts of record *within their respective jurisdictions* shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Emphasis supplied.

The phrase *"within their respective jurisdictions"* in section 93-8901, supra, has reference to the general original jurisdiction that existed in the district courts of this state long prior to the enactment of Montana's Uniform Declaratory Judgments Act. Within the limits of their differing territorial jurisdictions, the district courts have the power to declare rights, status and other legal relations under the aforesaid Act.

The opening sentence of the Act, section 93-8901, is a cautionary admonition reminding the trial courts that their first duty is to be sure that jurisdiction exists before deciding other

questions in the case. Compare Sadler v. Pennsylvania Refining Co., D.C., 31 F. Supp. 1.

In 1 Anderson's Actions for Declaratory Judgments (2d ed.), section 123, at pages 223-225, notes 17 and 18, it is said:

"While it is true that sporadic cases may be encountered occasionally, wherein it is essayed to enunciate the rule that the declaratory judgment statute increased, enlarged, or extended the jurisdiction of the court, yet it is the undoubted weight of authority, sustained upon unassailable reasons, that the declaratory judgment statutes do not have the effect of increasing or enlarging the jurisdiction of the courts.

"It may be regarded as well settled that the declaratory judgment statute not only does not confer or extend jurisdiction over an area not already covered, but that it cannot be used to give relief indirectly which could not be granted directly; it in no sense enlarges the jurisdiction of the court."

Section 93-8901, supra, speaks of "courts of record." Section 93-101 enumerates the various courts of justice in this state and section 93-102 provides that the courts enumerated in the first three subdivisions of the section 93-101, "and only those courts, are courts of record" namely: 1. The court of impeachment, 2. the supreme court, and 3. the district courts.

While the senate, sitting as a court of impeachment, and the supreme court, sitting as an organized body and created as a court of review, are by sections 93-101 and 93-102, both denominated as courts of record, yet it is quite obvious that neither the court of impeachment nor the supreme court has been granted the authority and power to accept and exercise original jurisdiction in original suits and proceedings for declaratory judgments.

Such proceedings and actions have their beginning and they are to be commenced in some one of the various district courts of the state which the Constitution, article VIII, section 11, says "shall have original jurisdiction in all cases at law and in equity * * * and for all such special actions and proceedings as are not otherwise provided for."

A court has either original or appellate jurisdiction. If its jurisdiction is confined to a determination of questions on appeal, it has no authority to determine the question in an action originally instituted in it. Rogers v. Leahy, 296 Ky. 44, 176 S.W. (2d) 93, 95, 149 A.L.R. 1267; also see 6 C.J.S., Appellate, pages 71, 72, notes 8-22.

Appellate jurisdiction necessarily implies that an issue has been formulated and passed upon in some inferior tribunal. Fine v. Lawless, 140 Tenn. 453, 205 S.W. 124.

The framers of Montana's Constitution, in creating the supreme court and conferring powers upon it, carefully provided that the supreme court, except as otherwise provided in the Constitution itself, *"shall have appellate jurisdiction only"* art. VIII, section 2; that the *"appellate jurisdiction* of the supreme court shall extend to all cases at law and in equity, subject however, to such limitations and regulations as may be prescribed by law" and that the supreme court shall have the power in its discretion to issue and hear certain well known common law writs "and such other original and remedial writs as may be necessary or proper to the complete exercise of its *appellate jurisdiction."* Article VIII, section 3.

The term "appellate jurisdiction," once used in section 2 and twice used in section 3 of article VIII of our Constitution has the same meaning as the same term appearing in section 110 of the Constitution of Kentucky concerning which the Kentucky Court of Appeals in Re Constitutionality of House Bill No. 222, 262 Ky. 437, 90 S.W. (2d) 692, 693, 103 A.L.R. 1085, at page 1086, said:

"Section 110 of the Constitution is as follows: 'The court of appeals shall have appellate jurisdiction only, which shall be co-extensive with the state, under such restrictions and regulations not repugnant to this Constitution, as may from time to time be prescribed by law. Said court shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions.' It will be seen that, with the exceptions of the power to issue certain writs, a matter not

here involved, the Court of Appeals has 'appellate jurisdiction only.' The word 'appellate' is used in contradistinction to the word 'original.' Original jurisdiction is jurisdiction conferred upon or inherent in a court in the first instance. 'Appellate jurisdiction * * * means the review by a superior court of the final judgment, order, or decree of an inferior court.' Ex parte Batesville, etc., R. Co., 39 Ark. 82. 'It is the essentiol criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted and does not create that cause.' Marbury v. Madison, 1 Cranch, 137, 172, 175, 2 L. Ed. 60; Auditor [of State] v. Atchison, etc., R. Co., 6 Kan. 500 7 Am. Rep. 575. In the early case of Smith v. Carr, 3 Ky. (Hardin) 305, the court said: 'Appellate jurisdiction, ex vi termini, implies a resort from an inferior tribunal of justice, to a superior, for the purpose of revising the judgments of the inferior tribunal. Thus, it is believed, is the sense in which the expressions have at all times been used by legal writers. This must be the sense in which they are used in the Constitution and in this sense they have been understood by the legislature; who, in their several acts upon the subject of appeals and writs of error, invariably speak of them, as the means of revising the judgments and decrees of the inferior courts; not as the means of correcting the acts of the ministerial officers of those courts'. The latest case on the question is Stuber v. Snyder's Committee, 261 Ky. 338, 87 S.W. (2d) 614, 617, where we said: ' "Appellate jurisdiction" means jurisdiction to retry and determine something that has already been tried in some other tribunal'.

"As the rendition of advisory opinions is no sense a review or rehearing of a cause that has been tried in a court below, it necessarily follows that House Bill No. 8, conferring the power on the judges to render an advisory opinion, conflicts with section 110 of the Constitution. Auditor [of state] v. Atchison, etc., R. Co., supra."

*Hearing on Order to Show Cause.* At the hearing held February 14th on the order to show cause, each and all of the de-

fendants interposed timely and proper challenges to the sufficiency of the facts set forth in each count of the complaint to state a cause of action entitling Morgan, the plaintiff taxpayer, to any relief whatever herein. See Chovanak v. Matthews, 120 Mont. 520, 188 Pac. (2d) 582; Barth v. Pock, 51 Mont. 418, 155 Pac. 282; State ex rel. Brooks v. Cook, 84 Mont. 478, at page 490, 276 Pac. 958; State ex rel. Riley v. District Court, 103 Mont. 576, at pages 582, 583, 64 Pac. (2d) 115; Thompson v. Tobacco Root Co-Op., 121 Mont. 445, at pages 450, 451, 193 Pac. (2d) 811; Monarch Mining Co. v. State Highway Comm., 128 Mont. 65, at pages 72, 73, 270 Pac. (2d) 738.

The defendants, the State Board of Examiners and J. Hugo Aronson, Frank Murray and Forrest H. Anderson, by their counsel, William F. Crowley, Esq., presented and argued a motion to quash this court's order to show cause on the grounds that the plaintiff's complaint, upon which the order to show cause is based, does not state facts sufficient to constitute a cause of action or to entitle the plaintiff to the relief sought or to any relief whatever and in addition thereto the defendant Board and its members by their said counsel presented and orally argued separate general demurrers to each purported cause of action set forth in the complaint.

The defendant, Morrison-Maierle, Inc., by its counsel, Edmond G. Toomey, Esq., and Michael Hughes, Esq., likewise presented and argued both a motion to quash the order to show cause and a general demurrer to each purported cause of action pleaded in the complaint, all made and based upon like grounds as are stated in the motions to quash and the demurrers of the defendants, the State Board of Examiners and its members.

The defendant, A & B Construction Company, by its counsel, Skedd, Harris and Mufich, presented and argued a separate motion to quash this court's order to show cause "and further to dismiss the complaint and proceeding herein * * * upon the * * * grounds * * * the complaint * * * wholly fails to state facts sufficient to entitle the said plaintiff to

the injunctive relief prayed for, or to any relief whatsoever * * * against the defendant A & B Construction Company * * * in any manner or at all; the complaint * * * wholly fails to state facts sufficient to show that the defendant A & B Construction Company has acted illegally, or threatens to so act.''

Plaintiff's counsel, Floyd O. Small, Esq., orally argued against the allowance of the defendants' aforesaid motions and demurrers and at the conclusion of all the arguments, respective counsel representing each party litigant, in open court, announced that each had elected to and does stand upon his said pleadings so filed, presented and argued and that each did not and does not require nor desire any time in which to either amend or plead further herein.

Thereupon the cause and proceeding was submitted to the court for its decision and judgment upon: (a) The plaintiff's complaint, (b) the defendants' motions to quash the order to show cause, (c) the defendants' separate demurrers to the complaint, and (d) the briefs filed and the oral arguments presented by counsel for each of the parties litigant.

*The questions.* The questions for decision were:

1. Does the supreme court have jurisdiction of this original proceeding for declaratory relief here commenced?

2. Does the complaint state facts sufficient to constitute a cause of action for declaratory relief in favor of the plaintiff Morgan and against the defendants?

*The Law.* The purpose of a complaint in our practice under the Codes is no different than that of a declaration at common law; in each case it is to state a claim for relief.

A trial court can aquire jurisdiction of a particular civil case only by the filing of a written complaint which must contain a statement constituting a cause of action. 1 Bancroft's Code Pleading, section 161, page 278. Compare Union Bank & Trust Co. v. Himmelbauer, 68 Mont. 42, 45, 216 Pac. 791.

A cause of action is the right which a party has to institute a judicial proceeding. Dillon v. Great Northern Ry. Co., 38

Mont. 485, at page 496, 100 Pac. 960; Cohen v. Clark, 44 Mont. 151, at page 156, 119 Pac. 775; Butte Electric Ry. Co. v. McIntyre, 71 Mont. 21, at pages 24, 25, 227 Pac. 61.

"A plaintiff must not merely allege a cause of action existing in favor of someone, but must show that it exists in favor of him, and that it accrued to him in the capacity in which he sues." 71 C.J.S., Pleading, section 71, page 187; Radosevich v. Engle, 111 Mont. 504, at page 512, 111 Pac. (2d) 299, 303.

In Moshannon Nat. Bank v. Iron Mountain Ranch Co., 45 Wyo. 265, 18 Pac. (2d) 623, 21 Pac. (2d) 834, at page 835, the court said:

"It is not enough that a plaintiff alleges a cause of action existing in favor of some one; he must show that it exists in favor of himself. 49 C.J. 140. If it does not, all other points or issues are wholly immaterial, so far as he is concerned." Also see Uhlig v. Diefendorf, 53 Idaho 676, 26 Pac. (2d) 801, at page 805.

As was said by this court in Crawford v. Pierse, 56 Mont. 371, at page 377, 185 Pac. 315, at page 318:

"However clear and concise the statement of facts may be, if it does not disclose a case upon which the court may grant redress, jurisdiction does not attach. * * * The court cannot redress a particular wrong unless the facts constituting the wrong are made manifest to it in a written complaint, as provided by the statute."

"When a complaint does not state facts sufficient to constitute a cause of action, the court does not have jurisdiction to render a judgment upon it. When the judgment roll upon its face shows the court was without jurisdiction to render the particular judgment, its pronouncement is not in fact a judgment." Hodson v. O'Keeffe, 71 Mont. 322, at page 325, 229 Pac. 722, 723.

In the early case of Territory ex rel. Blake v. Virginia Road Co., 1874, 2 Mont. 96, at page 101, Mr. Chief Justice Wade speaking for the supreme court, said:

"The lower courts have not jurisdiction to render judgment

in the absence of a cause of action, and it would be equally erroneous for this court to affirm such a judgment. If there is a judgment for the plaintiff, and the complaint shows upon its face no cause of action, the appellate court will reverse the judgment. A judgment by default cannot be rendered upon a bad complaint, and if it was so rendered, upon appeal to this court it would be reversed, for the reason that here, as well as in every stage of the proceeding, the complaint must support the judgment. A bad complaint will not sustain a good judgment, and the question whether or not there is a cause of action alleged can be raised for the first time in this court, for here, as in every other court, the judgment must fail if the foundation upon which it stands is materially defective.''

In Parker v. Bond, 1883, 5 Mont. 1, at page 12, 1 Pac. 209, at page 212, the appellate court, again speaking through Mr. Chief Justice Wade, said:

''The objection that the complaint does not state facts sufficient to constitute a cause of action is never waived, (section 86, Code); and in all cases, before affirming a judgment, the court, having the judgment roll before it, ought, on its own motion, to ascertain if the complaint supports the findings of fact and the judgment; for not in this court, or in any other, can a bad complaint support a good judgment.''

''A general demurrer challenges the sufficiency of plaintiff's pleading to state any cause of action, and raises no other question.'' 1 Bancroft' s Code Pleading and Practice, Ten Year Supplement, section 182 at page 101.

When a demurrer to a complaint is sustained, the complaint is, in effect, overturned. Seufert v. Stadelman, 178 Or. 646, 167 Pac. (2d) 936, 938, and destroyed as an existing pleading. Ogier v. Pacific Oil & Gas Development Corp., 132 Cal. App. (2d) 496, 500, 282 Pac. (2d) 574, 577, the judgment entered thereon is a judgment on the pleadings up to that time, Henderson v. Morton, 109 Fla. 300, 147 So. 456, 459, the facts alleged in the complaint are not in the case, no evidence can be introduced in support of the complaint nor can any issue of fact be

raised thereon. 71 C.J.S., Pleading, section 266, page 551, notes 17, 18 and 19.

In Chovanak v. Matthews, supra, 120 Mont. 520, 522-529, 188 Pac. (2d) 582, 583, this court, speaking through Mr. Justice Gibson, said:

"It appears that the only question argued in the district court, and the only question by that court decided, was whether appellant had legal capacity to bring the action, in other words, whether, under the facts set forth, any legal right of appellant was denied to him or threatened by any action of the respondents constituting the state board of equalization.

"But it is the question whether said Act, Chapter 142, is constitutional or not that appellant asks to have determined. He seeks this by action under the Uniform Declaratory Judgments Act, Chapter 90, section 9835.1 et seq., Revised Codes of Montana 1935. May the court decide that question in this action? * * *

"* * * Unless the action now before us is a real controversy wherein some legal, personal right of appellant is denied or imperiled by the enforcement of Chapter 142, the rule so long and so uniformly followed that the constitutionality of a statute must not be determined 'except in an action or proceeding in behalf of a person whose special, peculiar personal rights are affected thereby', is applicable here. Schieffelin v. Komfort, 212 N.Y. 520, 106 N.E. 675, 678, L.R.A. 1915D, 485.

"It is by reason of the fact that it is only judicial power that the courts possess, that they are not permitted to decide mere differences of opinion between citizens, or between citizens and the state, or the administrative officials of the state, as to the validity of statutes. Particularly is it true where a statute, regularly enacted by the law making branch of the government, is attacked by the citizen as being in violation of some provision or provisions of the Constitution.

"* * * The judicial power vested in the district courts and the Supreme Court of Montana, by the provisions of the Montana Constitution extend to such 'cases at law and in

equity' as are within the judicial cognizance of the state sovereignty. Article 8, sections 3, 11. By 'cases' and 'controversies' within the judicial power to determine, is meant real controversies and not abstract differences of opinion or moot questions. Neither federal nor state Constitution has granted such power. * * *

''Appellant's complaint is in truth against the law, not against the board of equalization. * * * There is no controversy between him and the board of equalization.

''The interest shown by appellant is only his interest as a citizen, elector, taxpayer and resident of Lewis and Clark county. This is the same interest that the other citizens, electors, taxpayers, and residents of the county have in the matter, and it is not such interest as is permitted to invoke the exercise of the judicial power of determining whether an Act of the legislature is violative of the Constitution. * * *

''Nor does the fact that the action here is brought under the Uniform Declaratory Judgments Act, Chapter 90, Revised Codes of Montana 1935, change the rule. It is still judicial power that is sought to be invoked, and that power only extends to actual 'cases' and 'controversies', not to abstract questions. Muskrat v. United States, 219 U.S. 346, 31 S. Ct. 250, 55 L. Ed. 246; Holt v. Custer County, 75 Mont. 328, 243 Pac. 811.

''A text writer, Anderson on Declaratory Judgments, section 31 says: 'The rule is not different in declaratory judgment actions from that obtaining with regard to actions generally, as to the necessity of a personal right in the plaintiff to maintain the action. * * * The general rule is that a party having only such interest as the public generally has cannot maintain a declaratory judgment action'. * * *

''Here, too, the constitutionality of Chapter 142 may be tested by a proper party in a proper case. The complaint of appellant does not present such a case, and the order and judgment of the district court sustaining the demurrer and dismissing the action was correct and is affirmed.''

In paragraph XII, supra, ·of his purported first cause of

action, the plaintiff Morgan boldly avers that on its determination of the appeal on December 7, 1956, in the Bryant case, 130 Mont. 512, 305 Pac. (2d) 340, this court declared chapter 278, laws of 1955, to be violative of sections 12 and 17 of the Enabling Act and therefore null, void and of no effect but that ''owing to the far-reaching consequences of that decision and since it was by a divided court, * * * [the] defendant State Board of Examiners *think* that the question should be again considered, to the end that Chapter 278 be sustained * * *''

Thus upon information and belief does the plaintiff Morgan, an utter stranger to the Bryant case, place before this court the wishful *thinking* of his adversary, the defendant Board of Examiners, that this court should further rehear, reconsider, review and then reverse its decision and judgment in the Bryant case, wherein it had long since reversed the judgment of the district court with directions to enter judgment for the plaintiff Bryant and to award him appropriate injunctive relief. This *thinking* of the Board was indulged subsequent to the handing down of the remittitur in the Bryant appeal, and at a time when Mr. Justice Davis, author of the court's opinion on such appeal had retired from the bench and after the appointment to this court of two new members who had not been privileged to hear any of the arguments of any of the parties on the appeal in the Bryant case, nor had they participated in the consideration of the cause either on its merits or on defendants' petition for rehearing therein.

Such procedure establishes a most dangerous precedent which is bound to have mischievous and unfortunate results.

As was said by this court in denying the motion for a rehearing in Gas Products Co. v. Rankin, 63 Mont. 372, at pages 397, 398, 207 Pac. 993, 1000, 24 A.L.R. 294:

''There is not the slightest reason to suppose that the opinion of any one of the members of this court who participated in the original decision would be changed if a rehearing should be granted and a reargument were allowed. And if the original decision of this court should be reversed, in the language of the

supreme court of Minnesota, in the case of Woodbury v. Dorman, 15 Minn. 341 (Gil. 274): 'This result would follow, not from a conviction upon the part of the members of the court by which the case was originally heard and determined, that the decision was erroneous, nor from the consideration of reasons and arguments not before advanced and considered, but solely from the change in the composition of the court'. Every citizen is desirous of having our laws definitely established, and the decision of the majority of this court upon any legal proposition coming before it is the law of the state, and should not be subject to change upon the change of the personnel of the court. Rights of persons and of property would never be secure if such were the case. The matter has been given thoughtful and earnest consideration by every member of this court, and it is the opinion of the court that in the orderly and proper administration of justice and interpretation of the law, the motion for rehearing should, under the circumstances and conditions of this particular case, be acted upon only by the members of the court participating in the original decision. * * *

"The matter has been considered upon the conditions as they existed with relation to this particular case. The principles underlying the proposition involved and controlling the court's conclusion have been long and well established by courts of other jurisdictions, and, while the cases cited are not entirely similar to the conditions presented in this case, the fundamental principles governing the attitude of the courts towards rehearings and rearguments are the same. The supreme court of the United States in the early case of Brown v. Aspden, 14 How. 25, 14 L. Ed. 311, in an opinion by Chief Justice Taney, concurred in by the entire court, announced the rule for that court as follows:

" 'But the rule of the court is this, that no reargument will be heard in any case after judgment is entered unless some member of the court who concurred in the judgment afterwards doubts the correctness of his opinion, and desires a further argument on the subject'." Citing number of cases.

In Cantrell v. City of Caruthersville, Mo. 1954, 267 S.W. (2d) 646, at page 648, it is said:

"It may be stated that an action for a declaratory judgment cannot be used as subterfuge for, or for the veiled purpose of relitigating a question as to which a former judgment is conclusive." Citing authorities.

Miller v. Turner, 111 Va. 341, 68 S.E. 1007, 1008, holds that where the Supreme Court of Appeals on original hearing and on rehearing adjudicates a controversy, it cannot be reopened.

In Board of Sup'rs of Hanover County v. Bazile, 1954, 195 Va. 739, 80 S.E. (2d) 566, at page 573, the court said:

"As pointed out above, that matter has been fully and finally adjudicated by this court, and this court's order on the subject cannot be altered, modified, enlarged or diminished in any manner or degree in the declaratory judgment proceeding or otherwise." Citing cases.

In Greenbaum v. New York City Housing Authority, Sup. 1956, 147 N.Y.S. (2d) 315, at pages 317, 318, in denying a temporary injunction and dismissing a complaint for a declaratory judgment, the court said:

"Declaratory judgment cannot substitute for other and adequate remedies available or to review jural relations already adjudicated. * * *

"It would be futile to assume jurisdiction here and a declaration is neither practical nor sensible."

In Lawrence v. Lawrence, 1952, 87 Ga. App. 150, 73 S.E. (2d) 231, at page 233, the court said:

"The Declaratory Judgment Act of this State, Ga. L. 1945, page 137, Code Ann. Supp., section 110-1101, et seq., is not intended to be used to set aside, modify, or interpret judicial decrees or judgments of courts having jurisdiction of the subject matter and parties, but is to be used to obtain a declaration of rights not already adjudicated." Citing numerous cases.

In Bingham v. Citizens & Southern Nat. Bank, 205 Ga. 285, 53 S.E. (2d) 228, at page 230, the court said:

"The Declaratory Judgments Act * * * does not nullify

statutes of limitations and established principles of law, so as to authorize a petitioner to brush aside previous judgments of the same court, and seek a determination of his rights as if they had never been adjudicated.'' Compare 16 Am. Jur., Declaratory Judgments, section 23, page 295.

In Cantrell v. City of Caruthersville, supra, it is said:

''In the interest of the State there should be an end to litigation arising out of the same subject matter, and it is to the interest of the individual litigant that he should not be vexed twice for the same cause. These are the dual grounds for the doctrine of *res judicata*, 50 C.J.S., Judgments, section 592, pages 11-13; * * * ''

The second from the last section of the Uniform Declaratory Judgments Act of this state, R.C.M. 1947, section 93-8915, reads:

''This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees.''

In Clark v. Memolo, 1949, 85 U.S. App. D.C. 65, 174 F. (2d) 978, 981, it is said:

''The Declaratory Judgment Act was designed to provide a remedy in a case or controversy while there is still opportunity for peaceable judicial settlement. It was the primary purpose of the act to have a declaration of rights not theretofore determined, and not to determine whether rights theretofore adjudicated have been properly adjudicated. * * * Unless so restricted there would be no end to that kind of litigation.'' To same effect see Hurley v. Lindsay, 4 Cir., 1953, 207 F. (2d) 410, at page 411.

In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 258, 16 S. Ct. 291, 293, 40 L. Ed. 414, 416, 417, it is said:

''When a case has been once decided by this court on appeal, and remanded to the circuit court, whatever was before this court, and disposed of by its decree, is considered as finally settled. The circuit court is bound by the decree as the law of

the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded. [Citing cases]. If the circuit court mistakes or misconstrues the decree of this court, and does not give full effect to the mandate, its action may be controlled, either upon a new appeal (if involving a sufficient amount) or by a writ or mandamus to execute the mandate of this court. * * *

"It must be remembered, however, that no question, once considered and decided by this court, can be re-examined at any subsequent stage of the same case."

To like effect see Kimpton v. Jubilee Placer Min. Co., supra, 22 Mont. 107, 109, 114, 55 Pac. 918, 919, wherein this court quoted with approval and adopted the rule announced in Stewart v. Salamon, 97 U.S. 361, 24 L. Ed. 1044, as follows:

" 'An appeal will not be entertained by this court from a decree entered in the circuit court or other inferior court in exact accordance with our mandate upon a previous appeal. Such a decree, when entered, is in effect our decree, and the appeal would be from ourselves to ourselves. If such an appeal is taken, however, we will, upon the application of the appellee, examine the decree entered, and, if it conforms to the mandate, dismiss the case, with costs. If it does not, the case will be remanded, with appropriate directions for the correction of the error. The same rule applies to writs of error. This is not intended to interfere with any remedy the parties may have by *mandamus*. This is an appeal from a decree entered upon our mandate. No complaint is made as to its form, and it seems to be in all respects according to our directions. The effort of the appellant was to open the case below, and to obtain leave to file new pleadings, introducing new defenses. This he could not do. The rights of the parties in the subject-matter of the suit were finally determined upon the original appeal, and all that remained for the circuit court to do was to enter a decree in

accordance with our instructions, and carry it into effect. If, in the progress of the execution of the decree, after its entry, either party is aggrieved, he may appeal from the final decree in that behalf; but such an appeal will bring up for re-examination only the proceedings subsequent to the mandate'.''

*Misconduct and Disobedience.* In paragraphs XII and XIV of his purported first cause of action, the plaintiff Morgan avers:

''That, in spite of the Supreme Court's declaration of December 7, 1956, in the case of * * * Bryant v. State Board of Examiners * * * the defendant * * * Board * * * on the 2d day of February, 1957, did make and pass a resolution to issue further bonds and expend further monies upon the authority of the said Chapter 278 of the Laws of 1955 * * * '' and that the defendant Board ''will, unless restrained by this court, issue bonds and expend the proceeds received from these bonds * * * under the purported authority of an invalid legislative act, to-wit Chapter 278 of the Laws of 1955 * * * '' In other words, the charge is that ''in spite'' of this court's judgment rendered against it in the Bryant case, the Board refused to obey this court's mandate and will continue so to do unless again and further restrained.

The remedy is not to give another judgment and order the issuance of another injunction against the Board. The thing to do is to require obedience to and compliance with this court's judgment and order already made in the Bryant case against the defendant State Board of Examiners and its members.

This court has the necessary power and it should use it when needed to enforce its lawful judgments and mandates.

Ours is a government of *law*, not of men. No man is above the law. Each must obey it be he great or small. Here the king as well as the peasant, the judge as well as the layman can do, and at times does do, wrong.

*Separation of Powers.* The Constitution of Montana says:

''The powers of the government of this state are divided into three distinct departments: The legislative, executive, and ju-

dicial, and *no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others,* except as in this constitution expressly directed or permitted." Emphasis supplied. Mont. Const. art. IV, section 1.

*Congress Acts.* H.R. 348, being the bill to amend section 12 of the Enabling Act so introduced in the 85th Congress, passed the House February 18th, passed the Senate February 21, and on February 26, was approved by the President.

*Supreme Court Acts.* February 25th, the majority opinion, in the instant case, written by Mr. Justice ANGSTMAN and concurred in by Mr. Justice CASTLES and Chief Justice HARRISON, was rendered and handed down as the decision of this court. Justices BOTTOMLY and ADAIR reserved the right to thereafter file their dissent in the cause.

*Legislative Assembly Acts.* February 27th, there was introduced in the House of Representatives of the Thirty-Fifth Legislative Assembly of the State of Montana by Representatives Mahoney, Barret and Juedeman, House Bill 474, being a bill for an act accepting the amendment to section 12 of the Enabling Act as provided in H.R. 348, supra, so enacted by the 85th Congress. House Bill 474 passed the State House of Representatives March 1st, passed the State Senate, March 5th and on March 9th was approved by Governor Aronson. This act is now Chapter 209 of the Montana Session Laws of 1957.

*Relief Must be Denied.* In this original proceeding for a declaratory judgment the supreme court may not lawfully grant any relief whatever to the plaintiff Morgan.

Why is Morgan entitled to no relief:

*First.* The supreme court has no jurisdiction over the subject matter of his suit.

The first question which must be determined by a court in every case is the question of jurisdiction. Endresse v. Van Vleet, 118 Mont. 533, 539, 169 Pac. (2d) 719. A court is bound to take notice of the limits of its authority. 21 C.J.S., Courts,

section 114, p. 175, note 49. Where, as here, a court is without jurisdiction it is irregular to make any order in the cause except to dismiss the suit. 49 C.J.S., Judgments, section 19, pages 45, 46, note 14. When once the court determines that it is without jurisdiction it should proceed no further than to enter an order dismissing the suit. All other questions or issues in the proceeding become immaterial. They fall. The proceeding ends.

The law is as stated in 49 C.J.S., Judgments, section 19, at pages 45, 48, 49, 50, notes 13, 35, 38, 39-41; viz:

"A judgment rendered by a court having no jurisdiction is a mere nullity, and will be so held and treated whenever and for whatever purpose it is sought to be used or relied on as a valid judgment. * * *

"A court cannot render a valid judgment unless it has jurisdiction over the subject matter of the litigation or the cause of action. * * * A judgment is wholly void in cases where the subject matter is withheld from the jurisdiction of the particular court, or is placed within the exclusive jurisdiction of another court. * * *

"Since the agreement or consent of the parties cannot give the court the right to adjudicate on any cause of action of subject matter which the law has withheld from its cognizance, any judgment rendered in such a case is void notwithstanding such consent or agreement. * * *

"In addition to jurisdiction of the parties and the subject matter, it is necessary to the validity of a judgment that the court should have jurisdiction of the question which its judgment assumes to decide, and jurisdiction to render a judgment for the particular remedy or relief which the judgment undertakes to grant. Where the court does not have such jurisdiction, the judgment is void."

*Second.* Morgan's complaint fails to state facts sufficient to constitute a cause of action in his favor or to entitle him to any relief whatever. However, the supreme court, lacked the jurisdiction to pass upon and determine that question.

*Third.* Had the court the jurisdiction to rule on the pleading

the sustaining of defendants' motions to quash would void the order to show cause against which the motions were directed, and the sustaining of defendants' demurrers to Morgan's complaint without leave to further plead, would overturn and wipe out such complaint leaving nothing upon which the court could grant any other relief.

*Fourth.* The Constitution which confers upon the district courts the original jurisdiction to hear and determine "all cases at law and in equity" which phrase includes suits for declaratory judgments (art. VIII, section 11), withholds such original jurisdiction from the supreme court.· (Art. VIII, sections 2 and 3).

*Jurisdiction Grounded on Necessity.* The majority opinion's answer to the challenge of the jurisdiction of the supreme court to exercise original jurisdiction in the instant proceeding is its *declaration* that, "Original jurisdiction is grounded upon the *proposition* that speedy determination of the questions is *necessary* to the end that legislative action by the assembly, now in session, may be sought before adjournment, if *necessary,* and particularly as regards the item of $194,012.04."

Jurisdiction of the supreme court herein rests upon no such uncertain, unstable and variable *"proposition"* as that of *necessity.* It has oft been said that *necessity knows no law,* except to conquer. Jurisdiction however "always emanates directly and immediately from *the law;* it is a power which nobody on whom *the law* has not conferred it can exercise." 50 C.J.S., Jurisdiction, page 1090, notes 19 and 20.

The supreme court may not lawfully create and *declare* jurisdiction in itself. It cannot extend its constitutional powers by judicial fiat. See C.J.S., Courts, section 34, page 43, note 91. It may not thus lift itself by its own bootstraps. The original jurisdiction must have been conferred by the State Constitution, otherwise it does not exist.

*Sporadic Cases.* In Carey v. McFatridge, 115 Mont. 278, 280, 281, 142 Pac. (2d) 229, known as the "Old Rocking Chair Whiskey Case" and in Bottomly v. Meagher County, 114 Mont.

234

220, 222, 223, 133 Pac. (2d) 770, similar *declarations* were made as to why it was *necessary* for this court to there accept original jurisdiction in those particular actions for declaratory judgments both of which suits were filed direct in the supreme court. Appellate jurisdiction necessarily implies that the controversy has been in some inferior tribunal before being brought to the supreme court for review. An appeal therefore is always from an inferior to a higher tribunal, and since neither the Carey case nor the Bottomly case was ever in an inferior court before being presented and argued in the supreme court, it is both incorrect and idle to *declare* that the appellate court there accepted original jurisdiction as *"necessary* and proper to the complete exercise of its *appellate jurisdiction."* [115 Mont. 278, 142 Pac. (2d) 231]. See the opening paragraphs of the majority opinion in the Carey case and of the court's opinion in the Bottomly case.

By such *declarations* would the supreme court constitute itself the Alpha and Omega, the beginning and the end, the first and the last, on the question of its right, authority and power to accept and exercise original jurisdiction in suits for declaratory judgments. Because of the attempts therein made to exercise jurisdiction and powers conferred exclusively upon the district courts and withheld from the supreme court, the rulings, holdings and observations of the court on the right and authority of the appellate court to accept and exercise original jurisdiction in Carey v. McFatridge, supra, in Bottomly v. Meagher County, supra, and in the instant case of Morgan v. State Board of Examiners, are unsound as violative of sections 2, 3 and 11 of article VIII of Montana's Constitution.

Had Morgan filed his complaint and commenced his suit in the district court of Lewis and Clark County, invoking that court's *original jurisdiction,* would the district judge there presiding have the requisite jurisdiction, power and authority to consider, review, reverse and overrule the supreme court's decision in the Bryant case?

If the original jurisdiction conferred upon the district court

by the Constitution fail to empower the district judge to so disregard and destroy this court's decision and final judgment in the Bryant case, whence comes the additional power for the supreme court, upon a change in its personnel and in the exercise of its so-called "original jurisdiction" *only*, to disregard, condemn and overrule such final judgment of this court rendered on timely and proper appeal in the Bryant case?

Original jurisdiction, whether exercised by one court or another in an original proceeding, means one and the same thing. That jurisdiction and authority when exercised by the supreme court is of no higher power or test than when exercised by the district court.

*Matters Previously Adjudicated.* In the instant case, the taxpayer Morgan prays for substantially the same relief against the defendants, the Board of Examiners of the State of Montana, and its members, as had already been declared, decreed and ordered for the taxpayer Bryant and against the defendant Board and its members in the Bryant case. With the denial of said defendants' petition for rehearing and the issuance and handing down of the remittitur, this court's final judgment and order in the Bryant case became the law of the case and *res judicata.* This exhausted all the defendants' remedies in this court under the Constitution and statutes of this state and under the rules and well-established practice of this court.

Counsel on behalf of the defendant Board and its members, under the prextet of arguing defendants' motion to quash the order to show cause and defendants' demurrers to Morgan's complaint, all based solely upon the grounds that the complaint fails to allege facts sufficient to state a cause of action, could not properly relitigate in Morgan's suit, the questions and issues that were already determined and decided against the contentions of the defendant Board and its members, by this court's final judgment and order in the Bryant case.

True, counsel on behalf of the defendant Board, Governor, Attorney General and Secretary of State, on oral arguments before this court, urged that the supreme court rehear, rehash,

reverse and overrule its decision in the Bryant case, but the law permits of no such practice or procedure.

This suit for a declaratory judgment may not be used for the purpose of relitigating the issues decided against the contentions of the defendants, the State Board of Examiners and its members in the Bryant case.

In 26 C.J.S., Declaratory Judgments, sections 23, 26, 27, 30, at pages 93, 98, 99, 101, 105-109, it is said:

"An action for a declaratory judgment may not be utilized for the purpose of retrying matters previously adjudicated. * * * An action for a declaratory judgment cannot be used as a subterfuge for, or for the veiled purpose of, relitigating questions as to which a former judgment is conclusive * * *." section 23, pages 93-94, notes 15, 17.

"In order to be sufficient to support a proceeding for, or the award of, declaratory relief, the controversy must be actual, real, genuine, bona fide, and not fictitious or merely colorable. A controversy necessary for declaratory relief does not exist where the person with the adverse interest merely declines to act or speak. A controversy is not created by taking a position and then challenging the government to dispute it. * * *

"The parties cannot by consent or agreement confer jurisdiction on the court to render a declaratory judgment in the absence of an actual justiciable controversy." Section 26, pages 98, 99, notes 51-60.

"In order to support a proceeding for, or the award of, declaratory relief the controversy must be of a justiciable nature. * * * In order to be justiciable, the controversy must be as to a matter within the jurisdiction of the court. * * *" Section 27, pages 99, 101, notes 61 and 69.

"A controversy, in order to be sufficient to support a proceeding for a declaratory judgment, must touch the legal relations of parties having adverse interests. * * * The interests of the adverse parties must be direct and substantial. A mere difference of opinion, not involving the assertion of adverse interests, is not sufficient to support an action for a

declaratory judgment." Section 29, pages 105, 106, 107, notes 12 and 13.

"A *question that is moot* is not a proper subject for a declaratory judgment.

"Declaratory judgment statutes do not authorize the courts to give advisory opinions." Section 30, pages 108, 109, notes 20 and 21.

Where as here the court had no jurisdiction over the subject matter, it was irregular to make any order in the cause except to dismiss the entire proceeding. 49 C.J.S., Judgments, section 19, subd. a, pages 45, 46, notes 13 to 16. Had this court acknowledged its lack of jurisdiction there would have then been no point in examining further into the pleadings or the contentions of the parties for the reason that any ruling or judgment given or made by a court having no jurisdiction is a mere nullity.

The statements, declarations, rulings and holdings of the majority opinion purporting to invalidate and overrule this court's decision and judgment pronounced December 7, 1956, in the Bryant case are wholly ineffective and void. That judgment continues to stand as the final judgment of this court.

Under our Constitution the supreme court has no more authority, power or jurisdiction to hear and determine, in the first instance, original suits for declaratory judgments than it has to hear and determine original suits to quiet title, or for divorce or annulment of marriage or for the foreclosure of a mortgage.

The supreme court, having no jurisdiction of the subject matter of Morgan's suit, had only the authority and power to dismiss such proceeding. That which the majority attempted beyond dismissing the complaint and the suit was and is wholly null, void and of no lawful force or effect.

MR. JUSTICE BOTTOMLY:

I am in full accord with, and concur in, the foregoing dissenting opinion of Mr. Justice Adair.